1  Burke, Williams & Sorensen, LLP
   Michael B. Bernacchi, SBN 163657
2      mbernacchi@bwslaw.com
   Keiko J. Kojima, SBN 206595
3      kkojima@bwslaw.com
   444 South Flower Street, Suite 2400
4  Los Angeles, CA 90071-2953
   Telephone: 213.236.0600
5  Facsimile: 213.236.2700

6  Attorneys for Plaintiff Hartford Life and Annuity Insurance Company

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11 HARTFORD LIFE AND ANNUITY          Case No. '08 CV 0133 JM POR
   INSURANCE COMPANY,
12                                     COMPLAINT FOR
                Plaintiff,             DECLARATORY RELIEF AND
13                                     INTERPLEADER
   v.
14                                     [28 U.S.C. § 2201; FRCP 22]
   GREGORY SHAUGHNESSY AS
15 EXECUTOR OF THE ESTATE OF
   SHELLEY TAYLOR OLANDER,
16 ANTHONY R. DESALVO, an
   individual,
17
                Defendants.
18

19

20      Plaintiff, Hartford Life and Annuity Insurance Company ("HARTFORD"),

21 alleges as follows:

22

23                    **JURISDICTION AND VENUE**

24

25      1.    Subject matter jurisdiction is conferred upon this Court by diversity of

26 citizenship, 28 U.S.C. § 1332(c).

27 ///

28 ///

Burke, Williams &
Sorensen, LLP
ATTORNEYS AT LAW
Los Angeles

LA #4826-8812-2370 v1                      COMPLAINT FOR DECLARATORY
                                              RELIEF AND INTERPLEADER

1    2.    Plaintiff HARTFORD is a company having its principal place of

2    business in the State of Connecticut. HARTFORD is authorized to conduct

3    business and is lawfully conducting business within the State of California and

4    within this district.

5

6    3.    Based upon information and belief, HARTFORD alleges that

7    Defendant GREGORY SHAUGHNESSY ("SHAUGHNESSY"), in his capacity as

8    executor of the Estate of Shelley Taylor Olander, is an individual and a citizen and

9    resident of the State of California.

10

11    4.    Defendant, ANTHONY R. DESALVO ("DESALVO") is an

12    individual and a citizen and resident of the County of San Diego, State of

13    California.

14

15    5.    Diversity of citizenship between HARTFORD and defendants exists

16    for purposes of the Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 22,

17    Federal Rules of Civil Procedure, in that HARTFORD is incorporated in the State

18    of Connecticut, with its principal place of business in Connecticut, and none of the

19    defendants are citizens or residents of Connecticut.

20

21    6.    More than $75,000 is in controversy in this case, exclusive of interest

22    and costs. The annuity contract which is the subject of this lawsuit has a present

23    value in excess of $75,000.

24

25    ## FACTS RELEVANT TO ALL COUNTS

26

27    7.    Effective March 7, 1996, HARTFORD issued its individual flexible

28    premium variable annuity contract number 310136239 (the "Annuity Contract"),

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-8812-2370 v1                    - 2 -                    COMPLAINT FOR DECLARATORY
RELIEF AND INTERPLEADER

1    designating Shelley Taylor Olander as annuitant and contract owner, and

2    DESALVO as primary beneficiary.  A copy of the Annuity Contract is attached

3    hereto as Exhibit "A."

4

5        8.    Shelley Taylor Olander and DESALVO subsequently filed for divorce

6    in the State of California.  As part of the divorce action, Shelley Taylor Olander and

7    DESALVO entered into a Marital Settlement Agreement (the "Agreement"), dated

8    December 15, 2004.  The Agreement does not make specific mention of the

9    Annuity Contract.  Section 15 of the Agreement, entitled "Waiver of Rights in

10   Other's Estate/Retirement", states as follows:

11           "The parties hereby revoke all former wills and trusts

12           executed by them, and each of them, specifically

13           including the "DESALVO/OLANDER TRUST" entered

14           into on May 14, 2001.  Each party relinquishes the right

15           to act as administrator or executor of the estate of the

16           other, all right to inherit from the other, and all right to

17           receive in any manner any property of the other on the

18           death of the other, either under succession laws or under

19           community property laws, or so-called family allowance,

20           except as a devisee, legatee or beneficiary under any Will

21           or other instrument subsequently executed by either party,

22           or when the other party is named in such capacity or such

23           right is explicitly provided in this Marital Settlement

24           Agreement.  Each party also waives any interest in the

25           other's retirement plans, if any.  Each party also

26           acknowledges hereby being advised:

27           a.    To consider the immediate drafting and

28           examination of a new Will; and

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-8812-2370 v1                    - 3 -                    COMPLAINT FOR DECLARATORY
                                                                 RELIEF AND INTERPLEADER

1         b.     To review all property rights and employment

2              benefits which will have a survivorship or inheritance

3              factor (such as life insurance, pensions, inter vivos trusts,

4              joint tenancy real and personal property, and bank

5              accounts), and

6         c.     To ensure that said Will and said rights and benefits

7              accurately reflect the current desires of such party to this

8              Agreement."

9  A copy of the Agreement is attached hereto as Exhibit "B."

10

11      9.     Shelley Taylor Olander did not change the beneficiary designation for

12  the Annuity Contract. The beneficiary remained DESALVO after their divorce.

13

14      10.   On or about August 26, 2005, Shelley Taylor Olander died.

15

16      11.   Subsequent to the death of Shelley Taylor Olander, a claim for the

17  benefits of the Annuity Contract was submitted to HARTFORD by

18  SHAUGHNESSY, as the representative for the Estate of Shelley Taylor Olander.

19

20      12.   Because DESALVO is the designated beneficiary under the Annuity

21  Contract, HARTFORD contacted him to see whether he would waive any claim to

22  the benefits. DESALVO ultimately informed HARTFORD that he had retained an

23  attorney and was not waiving any interest in the Annuity Contract.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

LA #4826-8812-2370 v1                    - 4 -                    COMPLAINT FOR DECLARATORY
RELIEF AND INTERPLEADER

## **FIRST CAUSE OF ACTION FOR INTERPLEADER**

13.    Plaintiff refers to and incorporates herein by this reference each and every allegation set forth in paragraphs 1 through 12 above, as though fully set forth herein.

14.    As a result of the claims or potential claims of SHAUGHNESSY, on the one hand, and DESALVO, on the other hand, there now exists potential rival, adverse and conflicting claims to the Annuity Contract benefits payable as a result of the death of Shelley Taylor Olander.  SHAUGHNESSY, on the one hand, contends that the Annuity Contract proceeds should be distributed to the Estate pursuant to the Agreement.  DESALVO, on the other hand, is the named beneficiary under the Annuity Contract and has not waived his claim to the proceeds.  HARTFORD cannot determine which Defendant is entitled to the proceeds or pay the proceeds without exposing itself to potential multiple liabilities or litigation or both.

15.    HARTFORD claims no beneficial interest in the Annuity Contract benefits.  It is a mere stakeholder of these proceeds.

16.    HARTFORD has necessarily incurred and will incur attorneys' fees and costs in bringing this complaint for interpleader.  HARTFORD is entitled to recover its attorneys' fees and costs in this proceeding.

17.    HARTFORD should not be compelled to become involved in the actual or potential disputes or contentions of defendants, and the defendants should be ordered to litigate or otherwise settle among themselves without further involving HARTFORD.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-8812-2370 v1                    - 5 -                    COMPLAINT FOR DECLARATORY
RELIEF AND INTERPLEADER

## SECOND COUNT FOR DECLARATORY JUDGMENT

18.    Plaintiff refers to and incorporates herein by this reference each and every allegation set forth in paragraphs 1 through 17 above, as though fully set forth herein.

19.    By reason of the facts pled herein, an actual dispute exists between HARTFORD and SHAUGHNESSY and DESALVO.  SHAUGHNESSY, on the one hand, contends that the Annuity Contract proceeds should be distributed to the Estate pursuant to the Agreement.  DESALVO, on the other hand, is the named beneficiary under the Annuity Contract and has not waived his claim to the proceeds.  HARTFORD cannot determine which Defendant is entitled to the proceeds or pay the proceeds without exposing itself to potential multiple liabilities or litigation or both.

20.    HARTFORD  is unable to deposit the proceeds of the annuity into the registry of the court until its value is determined.  Because the contract at issue is a variable annuity, its value fluctuates day-to-day.  Therefore, HARTFORD seeks an order from the court to determine the value of the annuity on a date certain to be chosen by the court, to enable HARTFORD to liquidate the annuity, deposit the proceeds forthwith, and obtain dismissal from this action.  HARTFORD begs leave to obtain that order by separate application.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1    WHEREFORE, Plaintiff HARTFORD LIFE AND ANNUITY

2  INSURANCE COMPANY demands judgment as follows:

3

4    1.    That Defendants be restrained from instituting any action against

5  Plaintiff HARTFORD for the recovery of the amount of the Annuity Contract or

6  any part thereof;

7

8    2.    That Defendants be required to interplead and settle between

9  themselves their respective rights to the proceeds under the Annuity Contract, and

10  that HARTFORD be discharged from any and all liability to defendants under said

11  Annuity Contract, or otherwise;

12

13    3.    That the Court declare the rights and liabilities of the parties in this

14  action.

15

16    4.    That HARTFORD be reimbursed for its necessary costs and attorney's

17  fees in prosecuting this interpleader action under Federal Rule of Civil Procedure

18  22; and,

19

20    5.    For such other and further relief as the Court deems proper.

21

22  Dated:  January 23, 2008                    Burke, Williams & Sorensen, LLP
                                                Michael B. Bernacchi
23                                              Keiko J. Kojima

24

25                                              By: _____
                                                    Michael B. Bernacchi
26                                              Attorneys for Plaintiff Hartford Life and
                                                Annuity Insurance Company
27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-8812-2370 v1                    - 7 -                    COMPLAINT FOR DECLARATORY
                                                                RELIEF AND INTERPLEADER



EXHIBIT A



403320 3rdREV/FC



**THE HARTFORD**

---

# A SPECIAL MESSAGE
# TO NEW POLICYHOLDERS

THIS NOTICE IS TO ADVISE YOU THAT SHOULD ANY COMPLAINTS ARISE REGARDING THIS CONTRACT, YOU SHOULD CONTACT THE AGENT WHO DELIVERED THIS CONTRACT TO YOU FOR ASSISTANCE. YOU CAN ALSO CONTACT US DIRECTLY AT THE FOLLOWING ADDRESS:

**Hartford Life Insurance Companies**
**Attn: Individual Annuity Services**
**P.O. Box 5085**
**Hartford, CT 06102-5085**
**Telephone Number: 1-800-862-6668**

WHENEVER THE HARTFORD OR ITS AGENT HAS BEEN UNABLE TO RESOLVE A CONSUMER COMPLAINT AFFECTING THIS CONTRACT, THE BELOW LISTED STATE AGENCY MAY BE CONTACTED TO ASSIST THE COMPLAINANT IN PURSUING A RESOLUTION OF THE COMPLAINT:

**CALIFORNIA DEPARTMENT OF INSURANCE**
**CONSUMER SERVICES DIVISION**
**300 SOUTH SPRING STREET**
**LOS ANGELES, CA 90013**
**IN STATE TOLL FREE TELEPHONE 1-800-927-4357**
**OUT OF STATE TELEPHONE 1-213-897-8921**

THE ABOVE STATE AGENCY SHOULD BE CONTACTED ONLY AFTER DISCUSSIONS BETWEEN THE HARTFORD OR ITS AGENT, OR BOTH, HAVE FAILED TO PRODUCE A SATISFACTORY RESOLUTION TO THE PROBLEM.

HL-CACOMPNOT

Printed in U.S.A.
R302R2.FRM



**THE HARTFORD**

Dear Contract Owner:

The State of California requires us to notify you that the Fixed Account within your Hartford variable annuity is protected by the California Life and Health Insurance Guarantee Association (CLHIGA). Membership in the association is required of all insurers licensed to do business in California. The enclosed notice outlines the association's obligations.

The association protects policyholders, within limits, against the inability of insurers to meet their financial obligations. In the unlikely event that an insurer should become insolvent, the association would assess other member insurers for the funds to pay claims and meet other obligations.

Your other variable annuity investment options, which are separate accounts not guaranteed by Hartford Life's member companies, are not protected by the association. You accept any potential investment risk or reward from equity-based investment options. However, separate accounts, because they are separate from an insurer's general account, are insulated from creditor's claims in the event of an insurer's insolvency.

The Fixed Account is covered by CLHIGA because its rate of interest is guaranteed by a member company of Hartford Life. Hartford Life's prudent management of its investment portfolio places it among the nation's most secure life insurers. For instance, 98 percent of the bonds within Hartford Life's General Account are investment grade and nearly 50 percent are rated AAA.

Our reputation for security and stability has helped make Hartford Life the nation's most popular issuer of individual annuities. If you have any questions about your annuity, or the guarantees associated with it, please contact our Teleservices Department at 1-800-862-6668 Monday through Thursday from 8 a.m. to 7 p.m. and Friday from 8 a.m. to 5 p.m. Eastern Time.

Sincerely,

*Jane P. Wolak*

Jane Wolak
Vice President
Investment Products Services
U.S. Wealth Management

Hartford Life Insurance Companies
200 Hopmeadow Street
Simsbury, CT 06089

Mailing Address: P.O. Box 5085
Hartford, CT 06102-5085
L226R1

Securities Offered Through Hartford Equity Sales Company, Inc. 200 Hopmeadow Street, Simsbury, CT 06089

11

# NOTICE OF NON-COVERAGE
## CALIFORNIA LIFE AND HEALTH INSURANCE
## GUARANTY ASSOCIATION ACT

## This policy is NOT covered by
~~The California Life and Health Insurance Guaranty Association~~

**EXCLUSIONS FROM COVERAGE**

The following are **not** covered by the California Life and Health Insurance Guaranty Association:

- o  Unallocated annuity contracts; that is, contracts which are not issued to and owned by individuals and which guarantee rights to group contract holders, not individuals;
- o  Employer and Association plans, to the extent they are self-funded or uninsured;
- o  Synthetic guaranteed interest contracts;
- o  Any policy or portion of it that is not guaranteed by the insurer or for which the insured has assumed the risk, such as a variable contract sold by prospectus;
- o  Any policy of reinsurance, unless an assumption certificate was issued;
- o  Interest rate yields that exceed an average rate;
- o  Any portion of a contract that provides dividends or experience rating credits.

**A determination as to whether an insurance contract is covered under the Guaranty Association or whether an annuity contract is allocated or unallocated must be initially made by the insurer based on its knowledge of the specific contract offered.**

Also, you are **not** protected by this Association if:

- o  Their insurer was not authorized to do business in this state when it issued the policy or contract;
- o  The policy was issued by a health care service plan (HMO), Blue Cross, Blue Shield, a charitable organization, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company, an insurance exchange or a grants and annuities society;
- o  You are eligible for protection under the laws of another state. This may occur when the insolvent insurer was incorporated in another state whose Guaranty Association protects insureds who live outside that state.

Insurance companies or their agents are required by law to give or send you this notice. **However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.**

If you have questions concerning this notice, you may contact:

California Life and Health Insurance            or            Consumer Service Division
 Guaranty Association                                                 California Department of Insurance
P.O. Box 17319                                                               300 South Spring Street
Beverly Hills, CA  90209-3319                                      Los Angeles, CA  90013
(213) 782-0182                                                             1-800-927-4357 or (213) 897-8921

Questions as to specific policies or annuities should be directed to the insurance company offering the product.

HL-14406-1                                                                12                                    Printed in U.S.A.
                                                                                                              N840R1.FRM

## THE HARTFORD

# ANNUITY CONTRACT SUMMARY

## PURCHASE INFORMATION

HARTFORD LIFE AND ANNUITY

Contract/Account Number:  310136239

Initial Payment:  $40,000.00

Product:  PUTNAM HARTFORD CAPITAL MANAGER

Payment Type:  FLEXIBLE

Contract State:  CA

Plan Type:  NON-QUALIFIED

Contract Effective Date:  MARCH  7, 1996

| FUND SELECTION AS OF : 12/18/2007 | % | FUND SELECTION AS OF : 12/18/2007 | % |
|---|---|---|---|
| PUTNAM VOYAGER | 37% | PUTNAM NEW OPPORTUNITIES | 38% |
| PUTNAM INTL GROWTH AND INCOME | 25% | | |

TOTAL   100%

## REGISTRATION

| CONTRACT OWNER(S) | TAX I.D. | BIRTH DATE | GENDER |
|---|---|---|---|
| SHELLEY TAYLOR OLANDER<br>640 CAMINO DE LA REINA<br>#1311<br>SAN DIEGO,      CA 92108 | 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 | 06/05/52 | N/A |

ANNUITANT
  SHELLEY TAYLOR OLANDER

CONTINGENT ANNUITANT                   RELATIONSHIP TO OWNER
  NONE

PRIMARY BENEFICIARY
  ANTHONY R. DESALVO                          SPOUSE

CONTINGENT BENEFICIARY
  NONE

## LICENSED REPRESENTATIVE

  TRANSAMERICA FINCL ADVISORS
  1150 SOUTH OLIVE ST STE T1400
  LOS ANGELES CA  90015
  HOUSE ACCOUNT

YOUR SIGNED APPLICATION IS ON FILE WITH HARTFORD LIFE INSURANCE COMPANY. FOR ANY CHANGES, COMPLETE THE ENCLOSED ANNUITY CHANGE REQUEST FORM.

Printed in U.S.A.

# INDIVIDUAL FLEXIBLE PREMIUM
# VARIABLE ANNUITY CONTRACT

### Hartford Life and Annuity Insurance Company
P.O. Box 2999
Hartford, Connecticut  06104-2999
(a stock life insurance company, herein called the Company)

Unless otherwise directed by the Contract Owner, the Company agrees to pay the named Annuitant, on the Annuity Commencement Date, if the Annuitant and Contract Owner are then living, the first of a series of annuity payments the frequency, period and dollar amounts of which shall be determined on the basis as set forth herein, in accordance with the Annuity Option selected.

This contract is issued in consideration of the payment of the initial premium payment.

This contract is subject to the laws of the jurisdiction where it is delivered.

The Contract Specifications on Page 3 and the conditions and provisions on this and the following pages are part of the contract.

## RIGHT TO EXAMINE CONTRACT

We want you to be satisfied with the contract you have purchased.  We urge you to closely examine its provisions.  If for any reason you are not satisfied with your purchase you may surrender the contract by returning the contract within ten days (30 days if this contract is replacing another annuity contract or life insurance policy) after you receive it.  A written request for cancellation must accompany the contract.  In such event, we will pay to the Contract Owner an amount equal to the sum of (i) the difference between the premiums paid and the amounts allocated to any Account under the contract and (ii) the Contract Value on the date of surrender.  The Contract Owner bears only the investment risk during the period prior to the Company's receipt of request for cancellation.

Signed for the Company

Richard G. Costello, Secretary

Thomas M. Marra, President

**Purchase Payments are flexible as described herein.**

**Nonparticipating**

ALL PAYMENTS AND VALUES PROVIDED BY THIS CONTRACT, WHEN BASED ON INVESTMENT EXPERIENCE OF A SUB-ACCOUNT, ARE VARIABLE AND ARE NOT GUARANTEED AS TO FIXED DOLLAR AMOUNT.  DETAILS OF THE VARIABLE PROVISIONS ARE DESCRIBED UNDER VALUATION PROVISIONS, PAGES 9 AND 10.



# THE
# HARTFORD

ILAVA94

Printed in U.S.A.
P490R1.FRM

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Contract Specifications | 3 |
| Definition of Certain Terms | 4 |
| Premium Payments Provision | 5 |
| Contract Control Provisions | 6 |
| General Provisions | 7 |
| Valuation Provisions | 9 |
| Termination Provisions | 10 |
| Settlement Provisions | 12 |
| Annuity Tables | 15 |

CONTRACT SPECIFICATIONS

CONTRACT NUMBER 0000000/310136239  CONTRACT DATE         MARCH 7, 1996
NAME OF ANNUITANT                  DATE OF ISSUE         MARCH 7, 1996
   SHELLEY TAYLOR OLANDER        ANNUITY COMMENCEMENT DATE JUNE 5, 2042
                         INITIAL PREMIUM PAYMENT    $40,000.00
                         MINIMUM SUBSEQUENT PAYMENT    $500.00
AGE OF ANNUITANT     43      ($100.00 IF PARTICIPATING IN A SYSTEMATIC
SEX OF ANNUITANT    FEMALE   DEPOSIT PROGRAM)
                         MINIMUM FIXED ACCOUNT INTEREST RATE    3%

CONTINGENT ANNUITANT
   NONE
DESIGNATED BENEFICIARY        CONTRACT OWNER (IF OTHER THAN ANNUITANT)
   ANTHONY R. DESALVO          SHELLEY TAYLOR OLANDER

---

DESCRIPTION OF BENEFITS

INDIVIDUAL FLEXIBLE PREMIUM VARIABLE ANNUITY CONTRACT

ANNUAL WITHDRAWAL AMOUNT:       CONTRACT YEARS 1-7
                             10% OF PREMIUM PAYMENTS

                             AFTER CONTRACT YEAR 7
                             THE GREATER OF:

                             100% OF THE CONTRACT VALUE REDUCED BY
                             THE TOTAL OF ANY PREMIUM PAYMENTS
                             MADE DURING THE 7 YEARS PRIOR TO
                             WITHDRAWAL; AND

                             10% OF PREMIUM PAYMENTS MADE DURING
                             THE 7 YEARS PRIOR TO WITHDRAWAL.

ANNUAL CONTRACT MAINTENANCE FEE:    $0 IF THE CONTRACT VALUE IS $50,000
                             OR MORE ON THE CONTRACT ANNIVERSARY.

                             $30 IF THE CONTRACT VALUE IS LESS THAN
                             $50,000 ON THE CONTRACT ANNIVERSARY.

MORTALITY AND EXPENSE RISK CHARGE:   1.25% PER ANNUM OF THE AVERAGE DAILY
                             CONTRACT VALUE.

ADMINISTRATION CHARGE:          .15% PER ANNUM OF THE AVERAGE DAILY
                             CONTRACT VALUE.  THIS CHARGE WILL NOT
                             BE ASSESSED AGAINST FIXED ACCOUNT
                             VALUES.

**CONTINGENT DEFERRED SALES CHARGES:**
SUBJECT TO THE ANNUAL WITHDRAWAL AMOUNT, SURRENDERS OF CONTRACT VALUES ATTRIBUTABLE TO PREMIUM PAYMENTS MAY BE SUBJECT TO A CONTINGENT DEFERRED SALES CHARGE ("CHARGE"). THE LENGTH OF TIME FROM RECEIPT OF THE PREMIUM PAYMENT TO THE TIME OF SURRENDER DETERMINES THE CHARGE.

DURING THE FIRST SEVEN CONTRACT YEARS, ALL SURRENDERS WILL BE FIRST FROM PREMIUM PAYMENTS AND THEN FROM EARNINGS. IF AN AMOUNT EQUAL TO ALL PREMIUM PAYMENTS HAS BEEN SURRENDERED, A CHARGE WILL NOT BE ASSESSED AGAINST THE SURRENDER OF THE REMAINING CONTRACT VALUE.

AFTER THE SEVENTH CONTRACT YEAR, ALL SURRENDERS WILL BE FIRST FROM EARNINGS AND THEN FROM PREMIUM PAYMENTS. A CHARGE WILL NOT BE ASSESSED AGAINST THE SURRENDER OF EARNINGS. IF AN AMOUNT EQUAL TO ALL EARNINGS HAS BEEN SURRENDERED, A CHARGE WILL NOT BE ASSESSED AGAINST PREMIUM PAYMENTS RECEIVED MORE THAN SEVEN YEARS PRIOR TO SURRENDER, BUT WILL BE ASSESSED AGAINST PREMIUM PAYMENTS RECEIVED LESS THAN SEVEN YEARS PRIOR TO SURRENDER. FOR THIS PURPOSE, PREMIUM PAYMENTS WILL BE DEEMED TO BE SURRENDERED IN THE ORDER IN WHICH THEY WERE RECEIVED.

THE CHARGE IS A PERCENTAGE OF THE AMOUNT SURRENDERED (NOT TO EXCEED THE AGGREGATE AMOUNT OF THE PREMIUM PAYMENTS MADE) AND EQUALS:

| CHARGE | LENGTH OF TIME FROM PREMIUM PAYMENT (NUMBER OF YEARS) |
|--------|------------------------------------------------------|
| 6% | 1 |
| 6% | 2 |
| 5% | 3 |
| 5% | 4 |
| 4% | 5 |
| 3% | 6 |
| 2% | 7 |
| 0% | 8 AND THEREAFTER |

NO CONTINGENT DEFERRED SALES CHARGES WILL BE ASSESSED IN THE EVENT THE CONTRACT TERMINATES DUE TO THE DEATH OF THE ANNUITANT OR CONTRACT OWNER (AS APPLICABLE), OR IF CONTRACT VALUES ARE APPLIED TO AN ANNUITY OPTION PROVIDED FOR UNDER THIS CONTRACT (PROVIDED, HOWEVER, ANY SURRENDER OUT OF OPTION 4 WILL BE SUBJECT TO CONTINGENT DEFERRED SALES CHARGES, IF APPLICABLE), OR IF THE CONTRACT IS SURRENDERED ON OR AFTER THE ANNUITANT'S 90TH BIRTHDAY, OR UPON THE EXERCISE OF THE ANNUAL WITHDRAWAL AMOUNT.

**FUND OPTIONS:**
THE INITIAL PREMIUM PAYMENT WILL BE ALLOCATED AS SPECIFIED IN YOUR APPLICATION.   THE
SAME ALLOCATIONS WILL BE MADE FOR SUBSEQUENT PREMIUM PAYMENTS UNLESS YOU CHANGE
THE ALLOCATION OR, AT THE TIME OF A PREMIUM PAYMENT, YOU INSTRUCT US TO ALLOCATE THAT
PAYMENT DIFFERENTLY.

**SEPARATE ACCOUNT:    PUTNAM VARIABLE TRUST SEPARATE ACCOUNT**

| SUB-ACCOUNT | BASED ON |
|---|---|
| PUTNAM ASIA PACIFIC GROWTH FUND | PUTNAM VT ASIA PACIFIC GROWTH FUND, (IA) |
| PUTNAM DIVERSIFIED INCOME FUND | PUTNAM VT DIVERSIFIED INCOME FUND, (IA) |
| THE GEORGE PUTNAM FUND | PUTNAM VT THE GEORGE PUTNAM FUND OF BOSTON, (IA) |
| PUTNAM GLOBAL ASSET ALLOCATION FUND | PUTNAM VT GLOBAL ASSET ALLOCATION FUND, (IA) |
| PUTNAM GLOBAL GROWTH FUND | PUTNAM VT GLOBAL GROWTH FUND, (IA) |
| PUTNAM GROWTH & INCOME FUND | PUTNAM VT GROWTH & INCOME FUND, (IA) |
| PUTNAM HEALTH SCIENCES FUND | PUTNAM VT HEALTH SCIENCES FUND, (IA) |
| PUTNAM HIGH YIELD FUND | PUTNAM VT HIGH YIELD FUND, (IA) |
| PUTNAM INCOME FUND | PUTNAM VT INCOME FUND, (IA) |
| PUTNAM INTERNATIONAL GROWTH FUND | PUTNAM VT INTERNATIONAL GROWTH FUND, (IA) |
| PUTNAM INTERNATIONAL GROWTH & INCOME FUND | PUTNAM VT INTERNATIONAL GROWTH & INCOME FUND, (IA) |
| PUTNAM INTERNATIONAL NEW OPPORTUNITIES FUND | PUTNAM VT INTERNATIONAL NEW OPPORTUNITIES FUND, (IA) |
| PUTNAM INVESTORS FUND | PUTNAM VT INVESTORS FUND, (IA) |
| PUTNAM MONEY MARKET FUND | PUTNAM VT MONEY MARKET FUND, (IA) |
| PUTNAM NEW OPPORTUNITIES FUND | PUTNAM VT NEW OPPORTUNITIES FUND, (IA) |
| PUTNAM NEW VALUE FUND | PUTNAM VT NEW VALUE FUND, (IA) |
| PUTNAM OTC & EMERGING GROWTH FUND | PUTNAM VT OTC & EMERGING GROWTH FUND, (IA) |
| PUTNAM RESEARCH FUND | PUTNAM VT RESEARCH FUND, (IA) |
| PUTNAM SMALL CAP VALUE FUND | PUTNAM VT SMALL CAP VALUE FUND, (IA) |
| PUTNAM UTILITIES GROWTH & INCOME FUND | PUTNAM VT UTILITIES GROWTH & INCOME FUND, (IA) |
| PUTNAM VISTA FUND | PUTNAM VT VISTA FUND, (IA) |
| PUTNAM VOYAGER FUND | PUTNAM VT VOYAGER FUND, (IA) |

OR OTHER FUNDS AS MAY BE MADE AVAILABLE FROM TIME TO TIME.

**DEFINITION OF CERTAIN TERMS**

**Account** - Any of the Sub-Accounts or the Fixed Account.

**Accumulation Unit** - An accounting unit of measure used to calculate the value of a Sub-Account of this contract before annuity payments begin.

**Administrative Office of the Company** - Currently located at 200 Hopmeadow St., Simsbury, Ct. All correspondence concerning this contract should be sent to our mailing address at P.O. Box 2999, Attn: Individual Annuity Operations, Hartford, CT 06104-2999.

**Annual Withdrawal Amount** - The amount that can be withdrawn in any Contract Year prior to incurring surrender charges.

**Annuitant** - The person on whose life this contract is issued.

**Annuity Commencement Date** - The date on which annuity payments are to begin as described under Settlement Provisions in this contract.

**Annuity Unit** - An accounting unit of measure used to calculate the amount of annuity payments under the variable annuity option.

**Beneficiary** - The person entitled to receive benefits as per the terms of the contract in case of the death of the Contract Owner or Annuitant, as applicable.

**Company** - The Hartford Life and Annuity Insurance Company.

**Contingent Annuitant** - The person so designated by the Contract Owner who, upon the Annuitant's death, prior to the Annuity Commencement Date, becomes the Annuitant.

**Contract Anniversary** - An anniversary of the Contract Date. Similarly, Contract Years are measured from the Contract Date. The Contract Date is shown on Page 3.

**Contract Maintenance Fee** - An amount which is deducted from the value of the contract at the end of the Contract Year or on the date of surrender of this contract, if earlier.

**Contract Owner** - The owner(s) of the contract.

**Contract Value** - The value of the Sub-Accounts plus the value of the Fixed Account on any day.

**Date of Issue** - The date on which an Account is established for the Contract Owner by the Company.

**Dollar Cost Averaging** - Contract Owner initiated systematic transfers from one or more Accounts to any other available Sub-Accounts.

**Due Proof of Death** - A certified copy of the death certificate, an order of a court of competent jurisdiction, a statement from a physician who attended the deceased, or any other proof acceptable to the Company.

**Fixed Account** - Part of the Company's General Account to which all or a portion of the Contract Value may be allocated.

ILVA94-4/5

19

Printed in U.S.A.
N411R0.FRM

**DEFINITION OF**
**CERTAIN TERMS**
**(Continued)**

**Fund(s) -** Currently the Funds specified on Page 3 or any other Fund(s) that may be added by the Company.

**General Account -** All assets of the Company other than those allocated to the Separate Accounts of the Company.

**Maximum Anniversary Value -** A value used in determining the death benefit. It is based on a series of calculations of Account Values on Contract Anniversaries, premium payments and partial surrenders.

As of the date of death, the Company will calculate an Anniversary Value for each Contract Anniversary prior to the deceased's attained age 81. The Anniversary Value is equal to the Account Value on a Contract Anniversary, increased by the dollar amount of any premium payments made since that anniversary and reduced by the dollar amount of any partial surrenders since that anniversary. The Maximum Anniversary Value is equal to the greatest Anniversary Value attained from this series of calculations.

**Premium Tax -** The amount of tax, if any, charged by a federal, state or municipal entity on premium payments or Contract Values.

**Separate Account -** An Account established by the Company to separate the assets funding the variable benefits for the class of contracts to which this contract belongs from the other assets of the Company. The assets in the Separate Account are not chargeable with liabilities arising out of any other business the Company may conduct. The Separate Account and the Funds, which are the underlying securities of the Separate Account, are listed on the Contract Specifications on Page 3 of this contract.

**Sub-Account -** The subdivisions of the Separate Account which are used to determine how the Contract Owner's Account is allocated between the Funds.

**Termination Value -** The value of the contract upon termination, as described in the section of the contract captioned "Termination Provisions."

**Valuation Day -** Every day the New York Stock Exchange is open for trading.

**PREMIUM**
**PAYMENTS**

**Premium Payments**

Premium payments are payable at the Administrative Office of the Company. Payments may be made by check payable to ITT Hartford Life and Annuity Insurance Company or by any other method which the Company deems acceptable.

The Initial Premium Payment is shown on Page 3. This is a flexible premium annuity. Additional payments may be accepted by the Company. The additional payments must be at least equal to the minimum subsequent premium payment shown on Page 3.

**Allocation of Premium Payments**

The Contract Owner shall specify that portion of any premium payment to be allocated to each Account, provided, however, that the minimum allocation to any Account may not be less than the Company's minimum amount then in effect.

Printed in U.S.A.
N412R0.FRM

**PREMIUM PAYMENTS (Continued)**

The Contract Owner may transfer Contract Values held in the Accounts into other Accounts; however, the Company reserves the right to limit the number of transfers to no more frequently than 12 per Contract Year with no two transfers being made on consecutive Valuation Days. Subject to the following two paragraphs, any such limitations will apply to all Contract Owners.

The right to reallocate Contract Values between the Accounts is subject to modification if the Company determines, in its sole opinion, that the exercise of that right by one or more Contract Owners is, or would be, to the disadvantage of other Contract Owners. Any modification could be applied to transfers to or from some or all of the Accounts and could include, but not be limited to, the requirement of a minimum time period between each transfer; not accepting transfer requests of an agent acting under a power of attorney on behalf of more than one Contract Owner, or limiting the dollar amount that may be transferred between the Accounts by a Contract Owner at any one time. Such restrictions may be applied in any manner reasonably designed to prevent any use of the transfer right which is considered by the Company to be to the disadvantage of other Contract Owners.

The maximum amount transferable from the Fixed Account during any Contract Year is the greater of 30% of the Fixed Account balance as of the last Contract Anniversary or the greatest of any prior transfer from the Fixed Account. This limitation does not apply to Dollar Cost Averaging. However, if any interest rate is renewed at a rate at least one percentage point less than the previous rate, the Contract Owner may elect to transfer up to 100% of the Funds receiving that reduced rate within 60 days of notification of the interest rate decrease. Transfers may not be made from the Sub-Accounts into the Fixed Account for the six-month period following any transfer from the Fixed Account into the other Sub-Accounts. The Company reserves the right to defer transfers from the Fixed Account for up to six months from the date of request.

**CONTRACT CONTROL PROVISIONS**

**Annuitant, Contingent Annuitant, Contract Owner**

The Annuitant may not be changed.

The designations of Contract Owner and Contingent Annuitant will remain in effect until changed by the Contract Owner. Changes in the designation of the Contract Owner may be made during the lifetime of the Annuitant by written notice to the Company. Changes in the designation of Contingent Annuitant may be made at any time prior to the Annuity Commencement Date by written notice to the Company. Notwithstanding the foregoing, if no Contingent Annuitant has been named and the Contract Owner/Annuitant's spouse is the Beneficiary, it will be assumed that the Contract Owner/Annuitant's spouse is the Contingent Annuitant.

The Contract Owner has the sole power to exercise all the rights, options and privileges granted by this contract or permitted by the Company and to agree with the Company to any change in or amendment to the contract. The rights of the Contract Owner shall be subject to the rights of any assignee of record with the Company and of any irrevocably designated Beneficiary. In the case of joint Contract Owners, each Contract Owner alone may exercise all rights, options and privileges, except with respect to the Termination and Partial Surrender/ Annual Withdrawal Amount Provisions and change of ownership.

**CONTRACT CONTROL PROVISIONS (Continued)**

**Beneficiary**

The Designated Beneficiary will remain in effect until changed by the Contract Owner. Changes in the Designated Beneficiary may be made during the lifetime of the Annuitant by written notice to the Administrative Office of the Company. If the Designated Beneficiary has been designated irrevocably, however, such designation cannot be changed or revoked without such Beneficiary's written consent. Upon receipt of such notice and written consent, if required, at the Administrative Office of the Company, the new designation will take effect as of the date the notice is signed, whether or not the Annuitant or Contract Owner is alive at the time of receipt of such notice. The change will be subject to any payments made or other action taken by the Company before the receipt of the notice.

In the event of the death of the Annuitant when there is no surviving Contingent Annuitant, the Beneficiary will be as follows. If the death of the Annuitant occurs prior to the Annuity Commencement Date, the Beneficiary shall be the surviving Contract Owner, or joint Contract Owners, if applicable, notwithstanding that the Designated Beneficiary may be different. Otherwise, the Beneficiary will be the Designated Beneficiary then in effect. If the Annuitant is the sole Contract Owner and there is no Designated Beneficiary in effect, the Annuitant's estate will be the Beneficiary.

In the event of the death of a Contract Owner prior to the Annuity Commencement Date, the Beneficiary will be as follows: If the owner was the sole Contract Owner, the Beneficiary shall be the Designated Beneficiary then in effect. If no Beneficiary designation is in effect or if the Designated Beneficiary has predeceased the Contract Owner, the Contract Owner's estate shall be the Beneficiary. At the first death of a joint Contract Owner prior to the Annuity Commencement Date, the Beneficiary shall be the surviving Contract Owner notwithstanding that the Designated Beneficiary may be different.

**GENERAL PROVISIONS**

**The Contract**

This contract constitutes the entire contract.

**Modification**

No modification of this contract shall be made except over the signature of the President, a Vice President, a Secretary or an Assistant Secretary of the Company.

The Company reserves the right to modify the contract, but only if such modification: (i) is necessary to make the contract or the Separate Account comply with any law or regulation issued by a governmental agency to which the Company is subject; (ii) is necessary to assure continued qualification of the contract under the Internal Revenue Code or other federal or state laws relating to retirement annuities or annuity contracts; (iii) is necessary to reflect a change in the operation of the Separate Account or the Sub-Account(s); (iv) provides additional Account options; or (v) withdraws Account options. In the event of any such modification, the Company will provide notice to the Contract Owner, or to the payee(s) during the annuity period. The Company may also make appropriate endorsement in the Contract to reflect such modification.

**GENERAL
PROVISIONS
(Continued)**

**Minimum Value Statement**

Any Termination Values, death benefits or settlement provisions available under this contract equal or exceed those required by the state in which the contract is delivered.

**Non-Participation**

This contract does not share in the surplus earnings of the Company. That portion of the assets of the Separate Account equal to the reserves and other contract liabilities of the Separate Account shall not be chargeable with liabilities arising out of any other business the Company may conduct.

**Misstatement of Age and Sex**

If the age or sex of the Annuitant has been misstated, the amount of the annuity payable by the Company shall be that provided by that portion of the amounts allocated to effect such annuity on the basis of the corrected information without changing the date of the first payment of such annuity. Any underpayments by the Company shall be made up immediately and any overpayments shall be charged against future amounts becoming payable.

If the age of the Annuitant or Contract Owner has been misstated, the amount of any death benefit payable shall be determined based upon the correct age of the Annuitant or Contract Owner.

**Incontestability**

We cannot contest this Contract.

**Reports to the Contract Owner**

There shall be furnished to each Contract Owner copies of any shareholder reports of the Funds and of any other notices, reports or documents required by law to be delivered to Contract Owners. Annually, a statement of the Contract Value is sent to the Contract Owner.

**Voting Rights**

The Company shall notify the Contract Owner of any Fund shareholder's meetings at which the shares held for the Contract Owner's Account may be voted and shall also send proxy materials and a form of instruction by means of which the Contract Owner can instruct the Company with respect to the voting of the shares held for the Contract Owner's Account. In connection with the voting of Fund shares held by it, the Company shall arrange for the handling and tallying of proxies received from Contract Owners. The Company will vote the Fund shares held by it in accordance with the instructions received from the Contract Owners having the right to give voting instructions. If a Contract Owner desires to attend any meeting which shares held for the Contract Owner's benefit may be voted, the Contract Owner may request the Company to furnish a proxy or otherwise arrange for the exercise of voting rights with respect to the Fund shares held for such Contract Owner's Account.

Printed in U.S.A.
N415R0.FRM

**GENERAL**
**PROVISIONS**
**(Continued)**

In the event that the Contract Owner gives no instructions or leaves the manner of voting discretionary, the Company will vote such shares of the appropriate Fund in the same proportion as shares of that Fund for which instructions have been received. Also, the Company will vote the Fund Shares in this proportionate manner which are held by the Company for its own Account. During the annuity period under a contract the number of votes will decrease as the assets held to fund annuity benefits decrease.

### Substitution

The Company reserves the right to substitute the shares of any other registered investment company for the shares of any Fund already purchased or to be purchased in the future by the Separate Account provided that the substitution has been approved by the Securities and Exchange Commission.

### Change in the Operation of the Separate Account

At the Company's election and subject to any necessary vote by persons having the right to give instructions with respect to the voting of the Fund shares held by the Sub-Accounts, the Variable Account may be operated as a management company under the Investment Company Act of 1940 or it may be deregistered under the Investment Company Act of 1940 in the event registration is no longer required. Deregistration of the Variable Account requires an order by the Securities and Exchange Commission.

### Proof of Survival

The payment of any annuity benefit will be subject to evidence that the Annuitant is alive on the date such payment is otherwise due.

**VALUATION**
**PROVISIONS**

### Net Premium Payments

The net premium payment is equal to the premium payment minus any applicable Premium Taxes. The net premium payment is applied to provide Fixed Account values or Sub-Account Accumulation Units with respect to the Sub-Account(s) selected by the Contract Owner.

The number of Accumulation Units credited to each Sub-Account is determined by dividing the net premium payment allocated to a Sub-Account by the dollar value of one Accumulation Unit for such Sub-Account, next computed after the receipt of a premium payment by the Company. The number of Accumulation Units so determined will not be affected by any subsequent change in the value of such Accumulation Units. The Accumulation Unit value in any Sub-Account may increase or decrease from day to day as described below.

The Company will determine the value of the Fixed Account by crediting interest to amounts allocated to the Fixed Account. The minimum Fixed Account interest rate is the rate shown on Page 3, compounded annually. The Company, at its discretion, may credit interest rates greater than the minimum Fixed Account interest rate.

**VALUATION PROVISIONS (Continued)**

### Net Investment Factor

The net investment factor for each of the Sub-Accounts is equal to the net asset value per share of the corresponding Fund at the end of the valuation period (plus the per share amount of any unpaid dividends or capital gains by that Fund) divided by the net asset value per share of the corresponding Fund at the beginning of the valuation period and subtracting from that amount the mortality and expense risk charge and the administration charge shown on Page 3. The General Account net investment factor is guaranteed to be equal to the Minimum Fixed Account Interest Rate shown on Page 3.

### Accumulation Unit Value

The Accumulation Unit Value for each Sub-Account will vary to reflect the investment experience of the applicable Fund and will be determined on each Valuation Day by multiplying the Accumulation Unit Value of the particular Sub-Account on the preceding Valuation Day by the net investment factor for that Sub-Account for the valuation period then ended. The value of the Sub-Account on each Valuation Day is then determined by multiplying the number of Accumulation Units in that Sub-Account by the Accumulation Unit Value on that Valuation Day.

### Annuity Unit Value

The value of an Annuity Unit for each Sub-Account of the Separate Account will vary to reflect the investment experience of the applicable Funds and will be determined by multiplying the value of the Annuity Unit for that Sub-Account on the preceding day by the product of (a) the net investment factor for that Sub-Account for the day for which the Annuity Unit value is being calculated, and (b) 0.999866, which is a factor that neutralizes an assumed interest rate of 5%.

### Contract Maintenance Fee

During each year that this contract is in force prior to the Annuity Commencement Date, a fee will be deducted from the contract at the end of the Contract Year or on the date of surrender of this contract, if earlier. The fee will be charged against the Contract Value by reducing the Fixed Account value and, with respect to the Sub-Accounts, the number of Accumulation Units held on that date on a pro-rata basis with respect to each active Account.

The number of Accumulation Units deducted from the Sub-Account is determined by dividing the pro-rata portion of the Contract Maintenance Fee applicable to that Sub-Account, by the value of an Accumulation Unit for the Sub-Account at the end of the Contract Year, or on the date of surrender, as applicable.

**TERMINATION PROVISIONS**

### Termination Prior to the Annuity Commencement Date

### Full Surrender

At any time prior to the Annuity Commencement Date, the Contract Owner has the right to terminate the contract by submitting a written request to the Administrative Office of the Company. In such event, the Termination Value of the contract may be taken in the form of a cash settlement.

Printed in U.S.A.
N417R0.FRM

**TERMINATION PROVISIONS (Continued)**

The Termination Value of the contract is equal to the Contract Value less:

(a)  any applicable Premium Taxes not previously deducted;
(b)  the Contract Maintenance Fee as specified on Page 3; and
(c)  any applicable contingent deferred sales charges as specified on Page 3.

The Termination Value provided by the contract is not less than the minimum values required by the insurance laws of the state in which this contract is issued.

**Partial Surrenders/Annual Withdrawal Amount**

The Contract Owner may request, in writing, a partial surrender of Contract Values at any time prior to the Annuity Commencement Date provided the Contract Value remaining after the surrender is at least equal to the Company's minimum amount rules then in effect. If the remaining Contract Value following such surrender is less than the Company's minimum amount rules, the Company will terminate the contract and pay the Termination Value.

The contingent deferred sales charge will be assessed against any Contract Values surrendered as described on Page 3. However, on a noncumulative basis, the Contract Owner may make partial surrenders during any Contract Year, up to the Annual Withdrawal Amount shown on Page 3 and the contingent deferred sales charge will not be assessed against such amounts. Surrender of Contract Values in excess of the Withdrawal Amount and additional surrenders made in any Contract Year will be subject to the contingent deferred sales charge, as described on Page 3, if applicable.

For Federal tax purposes, any surrenders will be deemed to be first from earnings, to the extent that they exist, and then from the premium payments.

**Termination After the Annuity Commencement Date**

This contract may not be surrendered for its Termination Value after the commencement of annuity payments, except with respect to Options Four and Five.

**Payment on Surrender - Deferral of Payment**

Payment on any request for surrender will be made as soon as possible and, with respect to the Contract Values in the Sub-Accounts, no later than seven days after the written request is received by the Company. However, such payment may be subject to postponement:

(a)  for any period during which the New York Stock Exchange is closed or during which trading on the New York Stock Exchange is restricted;

(b)  for any period during which an emergency exists as a result of which (i) disposal of the securities held in the Sub-Accounts is not reasonably practicable, or (ii) it is not reasonably practicable for the value of the net assets of the Separate Account to be fairly determined; and

(c)  for such other periods as the Securities and Exchange Commission may, by order, permit for the protection of the Contract Owners. The conditions under which trading shall be deemed to be restricted or any emergency shall be deemed to exist shall be determined by rules and regulations of the Securities and Exchange Commission.

**TERMINATION PROVISIONS (Continued)**

The Company may defer payment of any amounts from the Fixed Account for up to six months from the date of the request to surrender. If the Company defers payment for more than 30 days, the Company will pay interest of at least 3% per annum on the amount deferred.

**Death Benefit**

If the Annuitant dies before the Annuity Commencement Date and there is no designated Contingent Annuitant surviving, or if the Contract Owner dies before the Annuity Commencement Date, the Death Benefit will be payable as determined under the Contract Control Provisions. The Death Benefit is calculated as of the date the Company receives written notification of Due Proof of Death at the Administrative Office of the Company.

The Death Benefit will be the greatest of:

(a)   The Contract Value on the date of receipt of Due Proof of Death at the Administrative Office of the Company; or

(b)   The Maximum Anniversary Value as described on Page 5 of this Contract; or

(c)   100% of all premium payments made under the Contract, reduced by the dollar amount of any partial surrenders since the Date of Issue.

The Death Benefit may be taken in one sum or under any of the settlement options then being offered by the Company provided, however, that, in the event of a Contract Owner's death, any settlement option must provide that any amount payable as a death benefit will commence upon notification of Due Proof of Death and be completed within five years of the date of death or, if the benefit is payable over a period not extending beyond the life expectancy of the Beneficiary or over the life of the Beneficiary, such distribution must commence within one year of the date of death. Notwithstanding the foregoing, in the event of the Contract Owner's death where the sole Beneficiary is the spouse of the Contract Owner and the Annuitant or Contingent Annuitant is living, such spouse may elect, in lieu of receiving the death benefit, to be treated as the Contract Owner.

When payment is taken in one sum, payment will be made within 7 days after the date Due Proof of Death is received, except when the Company is permitted to defer such payment under the Investment Company Act of 1940.

**SETTLEMENT PROVISIONS**

**Annuity Commencement Date**

The Annuity Commencement Date is shown on Page 3. This date may be changed by the Contract Owner with 30 days advance written notification, and may be the fifteenth day of any month before or including the month of the Annuitant's 90th birthday. In the event the Contingent Annuitant becomes the Annuitant and in the absence of a written election to the contrary, the Annuity Commencement Date will be the fifteenth day of the month coincident with or next following the Annuitant's 90th birthday.

**SETTLEMENT
PROVISIONS
(Continued)**

**Election of Annuity Option**

The Contract Owner may elect to have the Termination Value, without deduction for any contingent deferred sales charge, applied on the Annuity Commencement Date under any one of the annuity options described below except the fifth option or under any of the settlement options then being offered by the Company. The Termination Value is determined on the basis of the Accumulation Unit value of each Sub-Account and the value of the Fixed Account no later than the fifth Valuation Day preceding the date annuity payments are to commence.

**Date of Payment**

The first payment under any option shall be made on the fifteenth day of the month immediately following approval of claim for settlement. Subsequent payments shall be made on the fifteenth day of each subsequent month in accordance with the manner of payment selected.

**Death of the Annuitant**

In the event of the death of the Annuitant while receiving annuity payments, the present value of any remaining payments will be paid in one sum to the Beneficiary unless other provisions shall have been made and approved by the Company. If the Annuitant was also the Contract Owner, any method of distribution must provide that any amount payable as a death benefit will be distributed at least as rapidly as under the method of distribution in effect at the Contract Owner's death. In the case of the Separate Account calculations, for such present value of the remaining payments the Company will assume a net investment rate of 5% per annum. The Annuity Unit value on the date of receipt of Due Proof of Death shall be used for the purpose of determining such present value. In the case of the General Account the net investment rate assumed will be the rate used by the Company to determine the amount of each certain payment.

**Allocation of Annuity**

The person electing an annuity option may further elect to have the value of the contract applied to provide a variable annuity, a fixed dollar annuity or a combination of both. Once every 3 months, following the commencement of annuity payments, the Contract Owner may elect, in writing, to transfer among any Sub-Account(s) on which variable annuity payments are based. No transfers may be made between the Sub-Accounts and the General Account.

If no election is made to the contrary, the value of each Sub-Account shall be applied to provide a variable annuity based thereon, and the value of the Fixed Account shall be applied to provide a fixed dollar annuity.

**Variable Annuity and Fixed Dollar Annuity**

Variable Annuity - A variable annuity is an annuity with payments increasing or decreasing in amount in accordance with the net investment results of the Sub-Account(s) of the Separate Account (as described in the Valuation Provisions). After the first monthly payment for a variable annuity has been determined in accordance with the provisions of this contract, a number of Sub-Account Annuity Units is determined by dividing that first monthly payment by the appropriate Sub-Account Annuity Unit value on the effective date of the annuity payments.

**SETTLEMENT
PROVISIONS
(Continued)**

Once variable annuity payments have begun, the number of Annuity Units remains fixed with respect to a particular Sub-Account. If the Contract Owner elects that continuing annuity payments be based on a different Sub-Account, the number will change effective with that election but will remain fixed in number following such election. The method of calculating the unit value is described under Valuation Provisions.

The dollar amount of the second and subsequent variable annuity payments is not predetermined and may increase or decrease from month to month. The actual amount of each variable annuity payment after the first is determined by multiplying the number of Sub-Account Annuity Units by the Sub-Account Annuity Unit value as described in the Valuation Provisions. The Sub-Account Annuity Unit value will be determined no earlier than the fifth Valuation Day preceding the date the annuity payment is due.

The Company guarantees that the dollar amount of variable annuity payments will not be adversely affected by variations in the expense results and in the actual mortality experience of payees from the mortality assumptions, including any age adjustment, used in determining the first monthly payment.

Fixed Dollar Annuity - A fixed dollar annuity is an annuity with payments which remain fixed as to dollar amount throughout the payment period.

**Annuity Options**

**FIRST OPTION - Life Annuity -** An annuity payable monthly during the lifetime of the payee, ceasing with the last payment due prior to the death of the payee.

**SECOND OPTION - Life Annuity with 120, 180 or 240 Monthly Payments Certain** - An annuity providing monthly income to the payee for a fixed period of 120 months, 180 months, or 240 months (as selected), and for as long thereafter as the payee shall live.

**THIRD OPTION - Joint and Last Survivor Life Annuity -** An annuity payable monthly during the joint lifetime of the payee and a secondary payee, and thereafter during the remaining lifetime of the survivor, ceasing with the last payment prior to the death of the survivor.

**FOURTH OPTION - Payment for a Designated Period -** An amount payable monthly for the number of years selected which may be from 5 to 30 years. The remaining balance of proceeds in the General Account or the Separate Account for any day is equal to the balance on the previous day decreased by the amount of any installment paid on that day and the remainder multiplied by the applicable net investment factor for the day as described in the valuation provisions. Any surrender out of this option will be subject to contingent deferred sales charges, as described on Page 3.

If this contract is issued to qualify under Section 401, 403, or 408 of the Internal Revenue Code of 1954 as amended, the fourth option shall be available only if the guaranteed payment period is less than the life expectancy of the Annuitant at the time the option becomes effective. Such life expectancy will be computed under the mortality table then in use by the Company.

VA94-14/15                                    Page 14

Printed in U.S.A.
N421R0.FRM

**SETTLEMENT PROVISIONS (Continued)**

**FIFTH OPTION** - Death Benefit Remaining with the Company - Proceeds from the Death Benefit left with the Company for a period not to exceed five years from the date of the Contract Owner's death prior to the Annuity Commencement Date. The proceeds will remain in the Sub-Account(s) to which they were allocated at the time of death unless the Beneficiary elects to reallocate them. Full or partial withdrawals may be made at any time. In the event of withdrawals, the remaining value will equal the Contract Value of the proceeds left with the Company, minus any withdrawals.

In the absence of an election by the Contract Owner, the Termination Value, without deduction for any contingent deferred sales charge, will be applied on the Annuity Commencement Date under the second option to provide a life annuity with 120 monthly payments certain.

**ANNUITY TABLES**

**Description of Tables**

The attached tables show the minimum dollar amount of the first monthly payments for each $1,000 applied under the options. Under the First or Second Options, the amount of each payment will depend upon the age and sex of the payee at the time the first payment is due. Under the Third Option, the amount of each payment will depend upon the sex of both payees and their ages at the time the first payment is due.

The variable payment annuity tables for the First, Second and Third Options are based on the 1983a Individual Annuity Mortality Table with ages set back one year and an interest rate of 5% per annum. The table for the Fourth Option is based on an interest rate of 5% per annum.

The fixed annuity payment tables for the First, Second and Third Options are based on the 1983a Individual Annuity Mortality Table with ages set back one year and an interest rate of 3% per annum. The table for the Fourth Option is based on an interest rate of 3% per annum.

Once the Contract Owner has elected an annuity option, that election may not be changed with respect to any Annuitant following the commencement of annuity payments.

**Minimum Payment**

No election of any options or combination of options may be made under this contract unless the first payment for each affected Account would be at least equal to the minimum payment amount according to Company rules then in effect. If at any time, payments to be made to any payee from each Account are or become less than the minimum payment amount, the Company shall have the right to change the frequency of payment to such intervals as will result in a payment at least equal to the minimum. If any amount due would be less than the minimum payment amount per annum, the Company may make such other settlement as may be equitable to the payee.

# VARIABLE PAYMENT ANNUITY TABLES
## Amount of First Monthly Payment
### For Each $1,000 Applied to
### Variable Payment Annuities

Second and subsequent annuity payments, when based on the investment experience of a Separate Account, are variable and are not guaranteed as to fixed dollar amount.

### SINGLE LIFE ANNUITIES

| Age | Male Payee | | | | | Female Payee | | | |
| | Monthly Payments Guaranteed | | | | | Monthly Payments Guaranteed | | | |
| | None | 120 | 180 | 240 | | None | 120 | 180 | 240 |
|---|---|---|---|---|---|---|---|---|---|
| 35 | $4.68 | $4.67 | $4.66 | $4.64 | | $4.52 | $4.52 | $4.51 | $4.50 |
| 40 | 4.86 | 4.85 | 4.82 | 4.79 | | 4.65 | 4.65 | 4.64 | 4.62 |
| 45 | 5.10 | 5.07 | 5.03 | 4.97 | | 4.83 | 4.82 | 4.80 | 4.77 |
| 50 | 5.41 | 5.35 | 5.28 | 5.20 | | 5.06 | 5.04 | 5.01 | 4.97 |
| 51 | 5.48 | 5.41 | 5.34 | 5.24 | | 5.12 | 5.09 | 5.06 | 5.01 |
| 52 | 5.55 | 5.48 | 5.40 | 5.30 | | 5.17 | 5.14 | 5.11 | 5.05 |
| 53 | 5.63 | 5.55 | 5.46 | 5.35 | | 5.23 | 5.20 | 5.16 | 5.10 |
| 54 | 5.71 | 5.63 | 5.53 | 5.40 | | 5.30 | 5.26 | 5.22 | 5.15 |
| 55 | 5.80 | 5.70 | 5.60 | 5.45 | | 5.37 | 5.33 | 5.28 | 5.20 |
| 56 | 5.89 | 5.79 | 5.67 | 5.51 | | 5.44 | 5.40 | 5.34 | 5.26 |
| 57 | 5.99 | 5.88 | 5.74 | 5.57 | | 5.52 | 5.47 | 5.40 | 5.31 |
| 58 | 6.10 | 5.97 | 5.82 | 5.62 | | 5.60 | 5.54 | 5.47 | 5.37 |
| 59 | 6.21 | 6.07 | 5.90 | 5.68 | | 5.69 | 5.62 | 5.54 | 5.43 |
| 60 | 6.33 | 6.17 | 5.98 | 5.74 | | 5.79 | 5.71 | 5.62 | 5.49 |
| 61 | 6.46 | 6.28 | 6.07 | 5.80 | | 5.89 | 5.80 | 5.70 | 5.55 |
| 62 | 6.60 | 6.40 | 6.16 | 5.86 | | 6.00 | 5.90 | 5.78 | 5.61 |
| 63 | 6.75 | 6.52 | 6.25 | 5.91 | | 6.11 | 6.00 | 5.86 | 5.67 |
| 64 | 6.91 | 6.64 | 6.34 | 5.97 | | 6.23 | 6.11 | 5.95 | 5.74 |
| 65 | 7.09 | 6.78 | 6.43 | 6.02 | | 6.37 | 6.22 | 6.04 | 5.80 |
| 66 | 7.27 | 6.91 | 6.52 | 6.08 | | 6.51 | 6.34 | 6.14 | 5.87 |
| 67 | 7.47 | 7.06 | 6.62 | 6.12 | | 6.66 | 6.47 | 6.24 | 5.93 |
| 68 | 7.68 | 7.21 | 6.71 | 6.17 | | 6.82 | 6.60 | 6.34 | 5.99 |
| 69 | 7.91 | 7.36 | 6.81 | 6.22 | | 7.00 | 6.74 | 6.44 | 6.05 |
| 70 | 8.15 | 7.52 | 6.90 | 6.26 | | 7.19 | 6.89 | 6.54 | 6.11 |
| 75 | 9.65 | 8.35 | 7.30 | 6.41 | | 8.41 | 7.74 | 7.06 | 6.34 |
| 80 | 11.78 | 9.16 | 7.59 | 6.48 | | 10.24 | 8.70 | 7.46 | 6.46 |
| 85 | 14.73 | 9.80 | 7.74 | 6.51 | | 13.00 | 9.55 | 7.69 | 6.50 |
| 90 | 18.62 | 10.21 | 7.80 | 6.51 | | 17.00 | 10.10 | 7.79 | 6.51 |

### JOINT AND LAST SURVIVOR ANNUITY

| Age of Male Payee | Age of Female Payee | | | | | | | | | | | |
| | 35 | 40 | 45 | 50 | 55 | 60 | 65 | 70 | 75 | 80 | 85 | 90 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 35 | $4.38 | $4.42 | $4.47 | $4.52 | $4.56 | $4.59 | $4.62 | $4.64 | $4.65 | $4.66 | $4.67 | $4.68 |
| 40 | 4.41 | 4.47 | 4.54 | 4.60 | 4.66 | 4.71 | 4.75 | 4.79 | 4.81 | 4.83 | 4.85 | 4.85 |
| 45 | 4.43 | 4.51 | 4.60 | 4.68 | 4.77 | 4.85 | 4.91 | 4.97 | 5.01 | 5.05 | 5.07 | 5.08 |
| 50 | 4.45 | 4.55 | 4.65 | 4.76 | 4.88 | 5.00 | 5.10 | 5.19 | 5.26 | 5.31 | 5.35 | 5.37 |
| 55 | 4.47 | 4.57 | 4.70 | 4.84 | 4.99 | 5.15 | 5.30 | 5.44 | 5.56 | 5.65 | 5.71 | 5.75 |
| 60 | 4.49 | 4.60 | 4.73 | 4.90 | 5.09 | 5.30 | 5.52 | 5.73 | 5.92 | 6.07 | 6.17 | 6.24 |
| 65 | 4.50 | 4.61 | 4.76 | 4.95 | 5.17 | 5.43 | 5.73 | 6.04 | 6.34 | 6.59 | 6.79 | 6.91 |
| 70 | 4.50 | 4.63 | 4.78 | 4.98 | 5.23 | 5.54 | 5.92 | 6.34 | 6.79 | 7.21 | 7.55 | 7.80 |
| 75 | 4.51 | 4.64 | 4.80 | 5.01 | 5.28 | 5.63 | 6.07 | 6.60 | 7.22 | 7.87 | 8.46 | 8.91 |
| 80 | 4.51 | 4.64 | 4.81 | 5.03 | 5.31 | 5.69 | 6.18 | 6.81 | 7.60 | 8.52 | 9.45 | 10.24 |
| 85 | 4.52 | 4.65 | 4.82 | 5.04 | 5.34 | 5.73 | 6.25 | 6.96 | 7.89 | 9.07 | 10.40 | 11.67 |
| 90 | 4.52 | 4.65 | 4.82 | 5.05 | 5.35 | 5.75 | 6.30 | 7.05 | 8.09 | 9.49 | 11.21 | 13.03 |

### PAYMENTS FOR A DESIGNATED PERIOD

| No. of Years | Amount of Monthly Payments | No. of Years | Amount of Monthly Payments | No. of Years | Amount of Monthly Payments | No. of Years | Amount of Monthly Payments | No. of Years | Amount of Monthly Payments | No. of Years | Amount of Monthly Payments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | $18.74 | 10 | $10.51 | 15 | $7.82 | 20 | $6.51 | 25 | $5.76 | 30 | $5.28 |
| 6 | 15.99 | 11 | 9.77 | 16 | 7.49 | 21 | 6.33 | 26 | 5.65 | | |
| 7 | 14.02 | 12 | 9.16 | 17 | 7.20 | 22 | 6.17 | 27 | 5.54 | | |
| 8 | 12.56 | 13 | 8.64 | 18 | 6.94 | 23 | 6.02 | 28 | 5.45 | | |
| 9 | 11.42 | 14 | 8.20 | 19 | 6.71 | 24 | 5.88 | 29 | 5.36 | | |

The monthly payment for any combination of ages not shown will be quoted upon request.

# FIXED PAYMENT ANNUITY TABLES
### Amount of Monthly Payments
### For Each $1,000 Applied to
### Fixed Payment Annuities

Payments are fixed and are guaranteed as to fixed dollar amount.

## FIRST AND SECOND OPTIONS - SINGLE LIFE ANNUITIES WITH:

| Age | Male Payee | | | | Female Payee | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Monthly Payments Guaranteed | | | | Monthly Payments Guaranteed | | | |
| | None | 120 | 180 | 240 | None | 120 | 180 | 240 |
| 35 | $3.41 | $3.40 | $3.39 | $3.38 | $3.23 | $3.23 | $3.22 | $3.22 |
| 40 | 3.61 | 3.60 | 3.58 | 3.56 | 3.39 | 3.38 | 3.38 | 3.37 |
| 45 | 3.87 | 3.85 | 3.82 | 3.77 | 3.59 | 3.58 | 3.57 | 3.55 |
| 50 | 4.19 | 4.15 | 4.10 | 4.03 | 3.84 | 3.83 | 3.81 | 3.77 |
| 51 | 4.27 | 4.22 | 4.17 | 4.08 | 3.90 | 3.89 | 3.86 | 3.82 |
| 52 | 4.34 | 4.29 | 4.23 | 4.14 | 3.97 | 3.95 | 3.92 | 3.88 |
| 53 | 4.43 | 4.37 | 4.30 | 4.20 | 4.03 | 4.01 | 3.98 | 3.93 |
| 54 | 4.51 | 4.45 | 4.37 | 4.26 | 4.10 | 4.08 | 4.04 | 3.99 |
| 55 | 4.60 | 4.54 | 4.45 | 4.32 | 4.18 | 4.15 | 4.11 | 4.04 |
| 56 | 4.70 | 4.62 | 4.53 | 4.39 | 4.25 | 4.22 | 4.18 | 4.11 |
| 57 | 4.80 | 4.72 | 4.61 | 4.45 | 4.34 | 4.30 | 4.25 | 4.17 |
| 58 | 4.91 | 4.82 | 4.69 | 4.51 | 4.42 | 4.38 | 4.32 | 4.23 |
| 59 | 5.03 | 4.92 | 4.78 | 4.58 | 4.52 | 4.47 | 4.40 | 4.30 |
| 60 | 5.15 | 5.03 | 4.87 | 4.64 | 4.61 | 4.56 | 4.48 | 4.37 |
| 61 | 5.28 | 5.14 | 4.96 | 4.71 | 4.72 | 4.66 | 4.57 | 4.44 |
| 62 | 5.42 | 5.26 | 5.06 | 4.78 | 4.83 | 4.76 | 4.66 | 4.51 |
| 63 | 5.57 | 5.39 | 5.16 | 4.84 | 4.95 | 4.86 | 4.75 | 4.58 |
| 64 | 5.74 | 5.52 | 5.26 | 4.90 | 5.07 | 4.98 | 4.85 | 4.65 |
| 65 | 5.91 | 5.66 | 5.36 | 4.96 | 5.21 | 5.10 | 4.95 | 4.72 |
| 66 | 6.10 | 5.81 | 5.46 | 5.02 | 5.35 | 5.22 | 5.05 | 4.79 |
| 67 | 6.29 | 5.96 | 5.56 | 5.08 | 5.51 | 5.36 | 5.16 | 4.86 |
| 68 | 6.50 | 6.11 | 5.66 | 5.13 | 5.67 | 5.50 | 5.26 | 4.93 |
| 69 | 6.73 | 6.28 | 5.76 | 5.18 | 5.85 | 5.65 | 5.37 | 5.00 |
| 70 | 6.97 | 6.44 | 5.86 | 5.23 | 6.04 | 5.80 | 5.49 | 5.06 |
| 75 | 8.45 | 7.32 | 6.31 | 5.40 | 7.26 | 6.69 | 6.04 | 5.32 |
| 80 | 10.55 | 8.17 | 6.62 | 5.48 | 9.07 | 7.69 | 6.48 | 5.45 |

## THIRD OPTION - JOINT AND LAST SURVIVOR ANNUITY

| Age of Male Payee | Age of Female Payee | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 35 | 40 | 45 | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
| 35 | $3.07 | $3.14 | $3.20 | $3.25 | $3.30 | $3.33 | $3.35 | $3.37 | $3.39 | $3.40 |
| 40 | 3.11 | 3.20 | 3.28 | 3.36 | 3.42 | 3.48 | 3.52 | 3.55 | 3.57 | 3.59 |
| 45 | 3.15 | 3.25 | 3.36 | 3.46 | 3.56 | 3.64 | 3.71 | 3.76 | 3.80 | 3.83 |
| 50 | 3.17 | 3.29 | 3.42 | 3.56 | 3.69 | 3.82 | 3.92 | 4.01 | 4.08 | 4.12 |
| 55 | 3.19 | 3.32 | 3.47 | 3.64 | 3.81 | 3.99 | 4.16 | 4.29 | 4.40 | 4.48 |
| 60 | 3.20 | 3.34 | 3.51 | 3.70 | 3.92 | 4.15 | 4.39 | 4.61 | 4.79 | 4.93 |
| 65 | 3.21 | 3.36 | 3.54 | 3.75 | 4.00 | 4.29 | 4.61 | 4.94 | 5.24 | 5.48 |
| 70 | 3.22 | 3.37 | 3.56 | 3.78 | 4.06 | 4.40 | 4.80 | 5.25 | 5.70 | 6.12 |
| 75 | 3.22 | 3.38 | 3.57 | 3.81 | 4.11 | 4.48 | 4.95 | 5.51 | 6.15 | 6.80 |
| 80 | 3.23 | 3.38 | 3.58 | 3.82 | 4.14 | 4.54 | 5.05 | 5.71 | 6.52 | 7.45 |

## FOURTH OPTION - PAYMENTS FOR A DESIGNATED PERIOD

| No. of Years | Amount of Monthly Payments | No. of Years | Amount of Monthly Payments | No. of Years | Amount of Monthly Payments | No. of Years | Amount of Monthly Payments | No. of Years | Amount of Monthly Payments | No. of Years | Amount of Monthly Payments |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 5 | $17.91 | 10 | $9.61 | 15 | $6.87 | 20 | $5.51 | 25 | $4.71 | 30 | $4.18 |
| 6 | 15.14 | 11 | 8.86 | 16 | 6.53 | 21 | 5.32 | 26 | 4.59 | | |
| 7 | 13.16 | 12 | 8.24 | 17 | 6.23 | 22 | 5.15 | 27 | 4.47 | | |
| 8 | 11.68 | 13 | 7.71 | 18 | 5.96 | 23 | 4.99 | 28 | 4.37 | | |
| 9 | 10.53 | 14 | 7.26 | 19 | 5.73 | 24 | 4.84 | 29 | 4.27 | | |

The monthly payment for any combination of ages not shown will be quoted upon request.



## THE HARTFORD

---

### AMENDATORY RIDER

This Rider is issued as a part of the Contract to which it is attached.  The Date of Issue and Contract Date applicable to this Rider are the same as those of the Contract.  Except where this Rider provides otherwise, it is subject to all conditions and limitations of such Contract.

The Death Benefit section of the Termination Provisions and the Settlement Provisions are amended by the addition of the following:

If any Contract Owner dies before the Annuity Commencement Date and the Death Benefit payable under the Contract is taken in one sum, that sum will be paid no later than five years after the date of death.

In the event of any Contract Owner's death where the sole Beneficiary is the spouse of the Contract Owner and the Annuitant or Contingent Annuitant is living, such spouse may elect, in lieu of receiving the Death Benefit, to be treated as the Contract Owner.  Only one such spousal election is permitted with respect to any one Contract.

Notwithstanding any provision to the contrary, if the Contract is owned by a corporation or other non-individual, a Death Benefit will be paid upon the death of the Annuitant prior to the Annuity Commencement Date.  Such benefit will be payable only as one sum or under the same settlement options and in the same manner as if an individual Contract Owner died on the date of the Annuitant's death.

If any Contract Owner or Annuitant dies on or after the Annuity Commencement Date, any remaining interest in the Contract will be paid at least as rapidly as under the method of distribution in effect at the time of death, unless paid over a period not extending beyond the life expectancy of the designated Beneficiary or over the life of the designated Beneficiary and such payments commence within one year after the date of death.

The Contract to which this Rider is attached is intended to qualify as an annuity contract for Federal tax purposes.  To that end, the provisions of the Contract are interpreted and administered to ensure or maintain such tax qualification, notwithstanding any other provisions to the contrary.

Signed for Hartford Life and Annuity Insurance Company

Richard G. Costello, Secretary                    Thomas M. Marra, President

ILA-IND72S                    33                    Printed in U.S.A.
M329R0 FRM



## INDIVIDUAL FLEXIBLE PREMIUM
## VARIABLE ANNUITY CONTRACT



# Annuity Change Request Form

**For Standard Mail Delivery:**

Hartford Life-IPS

Attention: Account Management

PO Box 5085

Hartford, CT 06102-5085

**For Private Express Mail Carriers:**

Hartford Life-IPS

Attention: Account Management

200 Hopmeadow Street

Simsbury, CT 06089



THE HARTFORD

Investment Professionals may call 1-800-862-7155    Clients may call 1-800-862-6668

Forms are available online at: www.hartfordinvestor.com

---

## THIS FORM SHOULD NOT BE USED FOR OWNERSHIP OR BENEFICIARY CHANGE REQUESTS

---

### Section A – Owner Information (Required)

| Owner Name: | Owner SSN/TIN: | Contract Number:<br>310136239 |
|---|---|---|

| Power of Attorney/Trustee (if owner is a trust)/Custodian: | Co-Trustee (if applicable): |
|---|---|

| Joint Owner Name (if applicable): | Annuitant Name (if different from Owner): |
|---|---|

| Telephone Number: | Best Time to Call:<br>_____ ☐ AM  ☐ PM | E-Mail Address (if available): |
|---|---|---|

---

### Section B – Address Change

Select which address is being changed:   ☐ Owner    ☐ Joint Owner    ☐ Annuitant    ☐ Contingent Annuitant

**Old Address:**

Street:

City:

State:          Zip Code:

**New Address:**

Street:

City:

State:          Zip Code

---

### Section C – Contingent Annuitant (For Non-Qualified Contracts Only)

☐ **Remove Existing Contingent Annuitant**

☐ **Add Contingent Annuitant**

| Contingent Annuitant Name: | SSN: | Date of Birth: |
|---|---|---|

☐ **Change Contingent Annuitant**

| Existing Contingent Annuitant Name: | SSN: | Date of Birth: |
|---|---|---|
| New Contingent Annuitant Name: | SSN: | Date of Birth: |

Page 1 of 2
V699R1

Form HL-15938-6   Printed in U.S.A.

## Annuity Change Request Form (continued)

### Section D – Name Change/Correction

Select Reason for Name Change*: ☐ Spelling Correction   ☐ Marriage
☐ Divorce   ☐ Other: _____

Select which Name is being changed: ☐ Owner[1]   ☐ Joint Owner[1]   ☐ Annuitant
☐ Contingent Annuitant   ☐ Beneficiary

| From: (Print Former Name) | To: (Print New Name) |
|---|---|
| | |

[1] If the name of an owner or joint owner is being changed, that owner or joint owner must sign below using both their former and new names. Both signatures are required for security and verification purposes.

| From: (Sign Former Name) | To: (Sign New Name) |
|---|---|
| | |

*Please Note: For changes other than spelling corrections, proper legal documentation (i.e. marriage certificate, divorce decree, court documents) must accompany the request.

### Section E – Date of Birth Correction

Select which Date of Birth is being corrected:

☐ Owner   ☐ Joint Owner   ☐ Annuitant   ☐ Contingent Annuitant   ☐ Beneficiary

| From: | To: |
|---|---|
| | |

* Please Note: Any age sensitive optional riders that were elected on the contract may be impacted, as a result of a change or correction to a Date of Birth. Please refer to your prospectus or contract for more information.

### Section F - Social Security Number/Tax Identification Number Change

Please Note: A completed Tax Form W-9 is required for these changes and must be submitted with this request

Select which SSN/Tax ID is being changed:

☐ Owner   ☐ Joint Owner   ☐ Annuitant   ☐ Contingent Annuitant   ☐ Beneficiary

| From: | To: |
|---|---|
| | |

### Section G – Authorized Signature

X _____

Signature of Owner/Participant/
Custodian/Trustee/POA

Title (if applicable)          Date

X _____

Signature of Owner/Participant/
Co-Trustee

Title (if applicable)          Date

# Important Notice

This contract may have an applicable Amendatory Rider available to both clients and brokers through our web site at www.hartfordinvestor.com.

---

You can obtain a copy of the corresponding Contract Amendatory Rider by visiting our website at www.hartfordinvestor.com, by contacting your Registered Representative, or by calling Putnam Insurance Product Services at 1-800-521-0538, Monday through Friday 8:30 a.m. to 8:00 p.m. Eastern time.

**Privacy Policy and Practices of The Hartford Financial Services Group, Inc. and its Affiliates**
(herein called "we, our, and us")

*This Privacy Policy applies to our United States Operations*

We value your trust. We are committed to the responsible:
a) management;
b) use; and
c) protection;
of **Personal Information.**

This notice describes how we collect, disclose, and protect **Personal Information.**

We collect **Personal Information** to:
a) service your **Transactions** with us; and
b) support our business functions.

We may obtain **Personal Information** from:
a) **You;**
b) your **Transactions** with us; and
c) third parties such as a consumer-reporting agency.

Based on the type of product or service **You** apply for or get from us, **Personal Information** such as:
a) your name;
b) your address;
c) your income;
d) your payment; or
e) your credit history;
may be gathered from sources such as applications, **Transactions,** and consumer reports.

To serve **You** and service our business, we may share certain **Personal Information.** We will share **Personal Information,** only as allowed by law, with affiliates such as:
a) our insurance companies;
b) our employee agents;
c) our brokerage firms; and
d) our administrators.

As allowed by law, we may share **Personal Financial Information** with our affiliates to:
a) market our products; or
b) market our services;
to **You** without providing **You** with an option to prevent these disclosures.

We may also share **Personal Information,** only as allowed by law, with unaffiliated third parties including:
a) independent agents;
b) brokerage firms;
c) insurance companies;
d) administrators; and
e) service providers;
who help us serve **You** and service our business.

When allowed by law, we may share certain **Personal Financial Information** with other unaffiliated third parties who assist us by performing services or functions such as:
a) taking surveys;
b) marketing our products or services; or
c) offering financial products or services under a joint agreement between us and one or more financial institutions.

We will not sell or share your **Personal Financial Information** with anyone for purposes unrelated to our business functions without offering **You** the opportunity to:
a) "opt-out;" or
b) "opt-in;"
as required by law.

We only disclose **Personal Health Information** with:
a) your proper written authorization; or
b) as otherwise allowed or required by law.

Our employees have access to **Personal Information** in the course of doing their jobs, such as:
a) underwriting policies;
b) paying claims;
c) developing new products; or
d) advising customers of our products and services.

We use manual and electronic security procedures to maintain:
a) the confidentiality; and
b) the integrity of;
**Personal Information** that we have. We use these procedures to guard against unauthorized access.

HPP Revised March 2005

V624R4

Some techniques we use to protect **Personal Information** include:
a) secured files;
b) user authentication;
c) encryption;
d) firewall technology; and
e) the use of detection software.

We are responsible for and must:
a) identify information to be protected;
b) provide an adequate level of protection for that data;
c) grant access to protected data only to those people who must use it in the performance of their job-related duties.

Employees who violate our Privacy Policy will be subject to discipline, which may include ending their employment with us.

At the start of our business relationship, we will give **You** a copy of our current Privacy Policy.

We will also give **You** a copy of our current Privacy Policy once a year if **You** maintain a continuing business relationship with us.

We will continue to follow our Privacy Policy regarding **Personal Information** even when a business relationship no longer exists between us.

*As used in this Privacy Notice:*

**Application** means your request for our product or service.

**Personal Financial Information** means financial information such as:
a) credit history;
b) income;
c) financial benefits; or
d) policy or claim information.

**Personal Health Information** means health information such as:
a) your medical records; or
b) information about your illness, disability or injury.

**Personal Information** means information that identifies **You** personally and is not otherwise available to the public. It includes:
a) **Personal Financial Information**; and
b) **Personal Health Information.**

**Transaction** means your business dealings with us, such as:
a) your **Application;**
b) your request for us to pay a claim; and
c) your request for us to take an action on your account.

**You** means an individual who has given us **Personal Information** in conjunction with:
a) asking about;
b) applying for; or
c) obtaining;
a financial product or service from us if the product or service is used mainly for personal, family, or household purposes.

This Privacy Policy is being provided on behalf of the following affiliates of The Hartford Financial Services Group, Inc.:

American Maturity Life Insurance Company; Capstone Risk Management, LLC; First State Insurance Company; Hart Life Insurance Company; Hartford Accident & Indemnity Company; Hartford Administrative Services Company; Hartford Casualty Insurance Company; Hartford Equity Sales Company, Inc.; Hartford Fire Insurance Company; Hartford HLS Series Fund II, Inc.; Hartford Insurance Company of Illinois; Hartford Insurance Company of the Midwest; Hartford Insurance Company of the Southeast; Hartford International Life Reassurance Corporation; Hartford Investment Financial Services, LLC; Hartford Investment Management Company; Hartford Life & Accident Insurance Company; Hartford Life and Annuity Insurance Company; Hartford Life Insurance Company; Hartford Life Group Insurance Company, Hartford Lloyd's Insurance Company; Hartford Mezzanine Investors I, LLC; Hartford Securities Distribution Company, Inc.; Hartford Series Fund, Inc.; Hartford Specialty Company; Hartford Specialty Insurance Services of Texas, LLC; Hartford Underwriters Insurance Company; Hartford-Comprehensive Employee Benefit Service Company; HL Investment Advisors, LLC; Hartford Life Private Placement, LLC; M-CAP Insurance Agency, LLC; New England Insurance Company; Nutmeg Insurance Agency, Inc.; Nutmeg Insurance Company; Nutmeg Life Insurance Company; Omni General Agency, Inc.; Omni Indemnity Company; Omni Insurance Company; P2P Link, LLC; Pacific Insurance Company, Limited; Planco Financial Services, Inc.; Property and Casualty Insurance Company of Hartford; Sentinel Insurance Company, Ltd.; Servus Life Insurance Company; Specialty Risk Services, Inc.; The Hartford Income Shares Fund, Inc.; The Hartford Mutual Funds II, Inc.; The Hartford Mutual Funds, Inc.; Trumbull Insurance Company; Trumbull Services, L.L.C.; Twin City Fire Insurance Company; Woodbury Financial Services, Inc.

2

V625R4

403320 2ndREV/BC    Printed in U.S.A. ©2004 The Hartford, Hartford, CT 06115



## MARITAL SETTLEMENT AGREEMENT

THIS AGREEMENT is made between ANTHONY DESALVO, hereinafter refe to as "Husband," and SHELLEY TAYLOR OLANDER, hereinafter referred to as "Wife," The Effective Date shall be December 15, 2004.

1. <u>STATISTICAL INFORMATION</u>

a. The parties were married on the 3RD day of January, 1998, and ever since that time have been and are now Husband and Wife.

b. There are no minor children of the parties.

c. Irreconcilable differences have arisen and these differences have led to an irremediable breakdown of their marriage. The parties have separated and agree that thei date of separation is March 4, 2004, six years and two months from their date of marriage

d. A proceeding for dissolution of marriage has been filed by Husband in the Superior Court of the County of San Diego, State of California, Action Number D484911. It is agreed that this matter shall proceed as a dissolution of marriage. It is agreed that the court shall be requested to approve this Marital Settlement Agreement and the court, in its judgment, shall order the parties to carry out the executory terms of the agreement and shall reserve jurisdiction over all executory provisions thereof.

2. <u>PURPOSES OF THIS AGREEMENT</u>: The purposes of this Agreement are to effect a complete and final settlement with reference to each other of:

a. All of the respective property right of the parties;

b. The obligations of each party for the support of the other;

c. All present, past, and future claims of any kind that either may have against the



ARD      STO

## EXHIBIT B

other, except as otherwise provided for herein.

This Agreement also sets forth specific matters over which a Court of competent jurisdiction shall retain jurisdiction.

3. SEPARATE LIVES AND PROPERTY:

a. The parties shall live separate and apart and except for the duties and obligations imposed and assumed under this Agreement, each shall be free from interference, authority, and control of the other as fully as though he or she were single and unmarried. Each party may conduct, carry on, and engage in any employment, profession, business, or trade which to him or her may seem advisable for his or her own use or benefit without, and free from, any control, restraint, or interference, direct or indirect, by the other party and in all respects as if each were unmarried.

b. Except as expressly provided to the contrary in this Agreement, any property acquired by either party from or after the date of separation solely with that party's separate property shall be the sole and separate property of the one acquiring it. Each party waives any and all rights in or to such property and confirms it to be the sole and separate property of the party acquiring it from and after the date of separation. The earnings from personal services of either party after the date of separation shall be the sole and separate property of the one acquiring them.

4. SPOUSAL SUPPORT

a. For Benefit of Wife.

Wife waives any past, present, or future spousal support and Husband's obligation for spousal support shall forever terminate.

Page 2 of 18

ARD

STO

b.    Wife understands the waiver in Paragraph 4(a) is final and she may never in the future petition any court for spousal support contrary to this Agreement as a result of this marriage and that no court will have jurisdiction to make any such award.  The Parties understand that when a court has no such jurisdiction, no support contrary to this Agreement may be ordered regardless of the hardship that this might cause.  The Parties have carefully bargained for the spousal support provisions as provided in this Agreement, and the provisions herein are intended to comply with the requirements of In re Marriage of Vomacka (1984) 36 Cal.3d 459, and In re Marriage of Brown (1995) 35  Cal.App.4th 785, to make clear that no court shall have authority to make any orders regarding spousal support.

b.    For Benefit of Husband:

1)    Husband acknowledges Wife's payments in the amount of $25,000.00 from March 2004 through December 15, 2004.  The parties agree that payments shall be deductible as and for spousal support on Wife's 2004 federal and state tax returns and reported by Husband as income on Husband's 2004 federal and state tax returns.

2)    Husband waives any additional past, present, or future spousal support and Wife's obligation for spousal support shall forever terminate.

c.    Husband understands the waiver in Paragraph 4(b)(2) is final and he may never in the future petition any court for spousal support contrary to this Agreement as a result of this marriage and that no court will have jurisdiction to make any such award.  The Parties understand that when a court has no such jurisdiction, no support contrary to this Agreement may be ordered regardless of the hardship that this might cause.  The Parties

 STO

Page 3 of 18

have carefully bargained for the spousal support provisions as provided in this Agreement, and the provisions herein are intended to comply with the requirements of In re Marriage of Vomacka (1984) 36 Cal.3d 459, and In re Marriage of Brown (1995) 35 Cal.App.4th 785, to make clear that no court shall have authority to make any orders regarding spousal support.

## 5. HUSBAND'S SEPARATE PROPERTY

The following assets and/or obligations are confirmed to Husband as his sole and separate property:

a.     1987 Jaguar XJ6;

b.     Personal jewelry, clothing and accessories in Husband's possession, custody and control as of the Effective Date of this Agreement;

c.     Account balances in accounts in Husband's name alone at Wells Fargo; and,

d.     All property acquired by Husband prior to marriage, or at any time by gift, devise or bequest (except to the extent the marital community acquired an interest in said property) and all property attributable or traceable from this separate property, except as may be expressly provided to the contrary in this Agreement.

## 6. WIFE'S SEPARATE PROPERTY

The following assets and/or obligations are confirmed to Wife as her sole and separate property:

a.     Those real properties located at ▮▮▮▮▮▮▮▮▮▮▮ San Diego, CA 92109; and ▮▮▮▮▮▮▮▮▮▮▮, San Diego, California 92108;

b.     Personal jewelry, clothing and accessories, and framed art in Wife's possession, custody and control as of the Effective Date of this Agreement;

Page 4 of 18

ARD    STO

c.    Account balances in accounts in Wife's name alone at Wells Fargo;

d.    Account balances in E*Trade Financial accounts in Wife's name alone;

e.    All property acquired by Wife prior to marriage, or at any time by gift, devise or bequest (except to the extent the marital community acquired an interest in said property) and all property attributable or traceable from this separate property, except as may be expressly provided to the contrary in this Agreement.

7.   DIVISION OF COMMUNITY PROPERTY AND CO-OWNED PROPERTY

Husband and Wife hereby divide their community and co-owned property, considering the apportionment of any community or joint liabilities. The parties agree that this division is fair and equitable. The assets of the parties shall be divided as follows:

a. Husband shall be awarded and assigned, as his sole and separate property, each asset set forth within this Paragraph. Wife waives any and all interest, right and title to the following property:

1)    Personal jewelry, clothing and accessories in Husband's possession, custody and control as of the Effective Date of this Agreement.

2)    The property located at ███████████████ San Diego, California 92109 and the furniture therein.

3)    The Wells Fargo Bank account previously utilized as the parties' household account with an account number ending in 8338.

b. Wife shall be awarded and assigned, as her sole and separate property, each asset set forth within this Paragraph. Husband waives any and all interest, right and title to the following property:

1)    Household furniture, furnishings, appliances, framed art, personal jewelry, clothing and accessories in her possession, custody and control as of the Effective Date of this Agreement.

2)    Account balances in accounts in Wife's name alone at Putnam Investments;

3)    That real property located at █████████████ La Mesa, CA 91941;



Page 5 of 18

4)    1999 Buick Regal;

5)    Balances in E*Trade accounts in the wife's name alone or in the name of the DeSalvo/Olander Trust;

6)    Furniture and furnishings located at ███████████████, San Diego, California;

7)    Balances at Wells Fargo accounts in the wife's name alone; and

8)    Wife's law practice, including but not limited to all fixtures, machines, furnishings, goodwill, tools of the trade, records, and data associated with the operation of this entity.

c.    Continuation of joint interests.

1)    Eastlake Country Club.  The parties have a golf membership at Eastlake Country Club.  They agree to equally share, and timely pay, the monthly golf membership dues and any assessments on this membership.  Each party will pay one-half of the monthly dues and for his or her golf and incidental charges incurred for the use of the membership.

2)    Husband's library.  Wife has agreed to allow Husband to store his books at Wife's law office located at 7871 University Ave., La Mesa, CA for as long as Wife deems it practicable.  Wife agrees to give Husband at least 14 days written notice of the termination of this arrangement, at which point Husband will have 14 calendar days to remove the books.  To the extent Husband fails to remove the books within 14 calendar days, Wife may assume that Husband has abandoned the property.

8.  DIVISION OF OBLIGATIONS

a.    Husband shall assume, pay promptly when due, and hold Wife free and harmless from all obligation associated with his Bay Cities MasterCard.

b.    Wife shall assume, pay promptly when due, and hold Husband free and harmless from the following obligations or liabilities:

Page 6 of 18

ARD            STO

1)    All taxes, impounds, liens, encumbrances, indebtedness and liability associated with the real properties located at ███████████ San Diego, CA 92109, and ███████████, La Mesa, CA 91941.

2)    All taxes, liens, encumbrances, indebtedness and liability associated with Wife's law practice;

3)    All taxes, liens, encumbrances, indebtedness and liability associated with the 1999 Buick Regal; and,

4)    The account balances for Bank One Visa, Chase MasterCard, and Advanta MasterCard.

c.    Warranty. Each party warrants to the other that the warrantor does not have any knowledge of any liability or obligation incurred prior to the parties' date of separation, which is not disclosed and set forth in this Agreement and on which the other party is or may become personally liable or which could be enforced against any asset held or to be received by the other party pursuant to the terms of this Agreement. The parties stipulate that the court shall reserve jurisdiction over the issue of liability between the parties as to an unknown or undisclosed community obligation in existence as of the Effective Date of this Marital Settlement Agreement.

d.    Liabilities Paid by Party Incurring Obligation. Any liability or obligation, including, but not limited to tax obligations, incurred at any time by either party and not expressly identified in this Agreement, shall be paid solely by the party incurring it unless the obligation is expressly identified in this Marital Settlement Agreement as payable in whole or in part by the other party.

e.    Liability Associated with Awarded Asset. Except as may be expressly provided to the contrary in this Agreement, the party to whom an item of property is entirely awarded or confirmed under this Agreement shall be solely responsible for all obligations, including, but not limited to, interest, penalties, taxes, liens and encumbrances incurred at any time relative to the asset. Each party shall be responsible for payment of their

Page 7 of 18

ARD    STO

proportionate share of all obligations, including, but not limited to tax obligations incurred at any time relative to any asset(s) in which the parties both retain an interest, after the Effective Date of this Agreement.

f.    Indemnification for Assumed Obligations. The party responsible for payment of an obligation pursuant to this Section shall defend, indemnify and hold the other party harmless from all liabilities, costs and expenses relative to that obligation, including reasonable attorneys fees and costs incurred by the other party in defending or responding to any collection action.

g.    Separate Liability and Obligations. Each party warrants to the other that the warrantor has neither incurred since the parties' date of separation, nor will incur after the Effective Date of this Agreement, any liability or obligation on which the other party is or may become personally liable or which could be enforced against an asset held or to be received by the other party pursuant to the terms of this Agreement.

9. **EQUALIZATION PAYMENT**

a. To achieve a fair and equitable division of the community estate, including all assets and obligations, Wife shall execute an interspousal transfer deed to Husband for the real property located at ███████████████, San Diego, CA 92109. Husband acknowledges that he has previously relinquished by Quit Claim deed all his interest in the real property located at ████████████ San Diego, CA 92109. Husband also agrees to relinquish all his interest in the real property located at ██████████ La Mesa, California 91941.

b. From the date of the interspousal transfer deed from Wife to Husband for the real property located at ████████████ San Diego, California 92109, Husband shall be solely responsible for the payment of all mortgage payments, homeowner's fees and assessments, taxes, insurance and maintenance costs related to said property. It is acknowledged and agreed that Wife shall have no liability for any expenses associated with said property after the interspousal transfer deed is executed.

Page 8 of 18

*ARB*

*STO*

c. To assist Husband in paying the aforesaid payments for the real property located at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, San Diego, California, 92109, Wife shall loan to Husband the sum of $45,000.00 pursuant to a promissory note, secured by a second deed of trust on said property. The loan, which shall be non-assignable, shall earn interest at the rate of six (6%) percent per annum and shall become all due and payable on or before March 31, 2009. Wife shall be entitled to notice in the event Husband fails to pay the mortgage payments on the first deed of trust on said property in a timely manner and shall be entitled to foreclose on the property if the first mortgage is not paid according to its terms or the second mortgage is not paid in full when due. Wife shall also be entitled to call the loan due and payable in the event Husband defaults in the payment of the first mortgage on ▓▓▓▓▓▓▓▓▓▓▓▓ or files for bankruptcy.

10. **VEHICLES-HOLD HARMLESS:**

a. Husband and Wife shall each hold the other free and harmless from the use and operation of any vehicle confirmed or awarded to the respective party.

b. If any claim, action or proceeding is later brought seeking to hold Wife liable on account of the future use and operation of a vehicle confirmed or awarded to Husband, Husband shall defend, indemnify and hold Wife harmless from all liabilities, costs and expenses relative to that claim, including attorneys fees and costs incurred by Wife in defending or responding to any collection claim, action or proceeding and any amounts paid by Wife in satisfaction of any judgment or other award.

c. If any claim, action or proceeding is later brought seeking to hold Husband liable on account of the future use and operation of a vehicle confirmed or awarded to Wife, Wife shall defend, indemnify and hold Husband harmless from all liabilities, costs and expenses relative to that claim, including attorneys fees and costs incurred by Husband in defending or responding to any collection claim, action or proceeding and any amount paid by Husband in satisfaction of any judgment to other award.

11. **FULL DISCLOSURE**

Page 9 of 18

ARB    STO

a.    The parties warrant to each other that the warrantor is not now, nor at the time of separation, possessed of any property of any kind or description other than the property specified in this Agreement.  If it is subsequently determined by a court of competent jurisdiction that either party owned or otherwise possessed property not listed herein, the party owning or otherwise possessing such undisclosed property agrees to pay to the other, on demand, a sum equal to one-half of the value of such property at the time that such determination is made by the court.

b.    Each party warrants to the other that he or she has accurately disclosed to the other all material facts now known to the warranting party relating to the present or future fair market value of all community assets and liabilities.  If either party willfully misstates or fails to disclose any material facts relating to the present or future fair market value of any community asset or liability, that warrantor will pay to the warrantee a sum sufficient to result in an equal or equitable disposition of the asset or liability, taking into account its actual fair market value. For purposes of this provision, the actual fair market value of any such asset or liability will be determined, at the warrantee's election, as of either (a) the effective date of this agreement or (b) the date on which the warrantee discovers the misstatement or failure to disclose. The warrantor will further pay to the warrantee interest on the sum determined at the legal rate per annum from the date elected for determination of the actual fair market value of the asset or liability to the date of payment. This provision will not be deemed to impair the availability, in a Court of competent jurisdiction, of any other remedy arising from nondisclosure of material facts relating to valuation.

c.    In order to reach early settlement, the parties have not utilized rights of "discovery" (pretrial subpoenas and testimony under oath, interrogatories, requests for admissions and so on). Both parties acknowledge that it is therefore impossible to be sure exactly how much property there is, what kind it is, or what it is worth without doing all of those things.  In the interest of saving time, money, and strain of formal and costly

Page 10 of 18


ARD    STO

procedures, the parties have accepted the disclosures of the other, based on each party's duty of disclosure under the laws of the State of California. In reliance of said duties of disclosure, the parties have elected to refrain from further investigation and discovery and built into this Agreement whatever special protections the parties individually feel are needed. Based thereon, the parties, and each of them, desire to enter into this Agreement without the benefit of further investigation and discovery.

d.      Legal Remedies for Breach of Warranty. This Agreement is not intended to impair the availability, in a court of competent jurisdiction, of any other remedy arising from non-disclosure of community or joint liabilities, including without limitation, the remedies set forth in Family Code section 2556 (former Civil Code section 4353).

12.    REIMBURSEMENT WAIVERS.    Except as otherwise provided in this Agreement, each Party waives each of the following:

a.      Epstein credits (In re Marriage of Epstein (1979) 24 Cal.3d 76) and all rights to reimbursement to which a Party may be entitled to as a result of the payment of community obligations since the Separation Date.

b.      Watts credits (In re Marriage of Watts (1985) 171 Cal. App.3d 366) and all rights to reimbursement to which a Party may be entitled to as a result of one Party's use of community assets since the Separation Date.

c.      All rights to reimbursement under Family Code section 2640, or otherwise, for separate property contributed to the acquisition or maintenance of community property.

These waivers have been taken into consideration by each Party in his or her determination of a fair and equitable division of the marital estate, and constitute a part of the division of the marital estate.

13. NO UNDISCLOSED GIFTS

Each party warrants to the other that the warrantor has not made, without the warrantee's knowledge and consent, any gift or disposition of community property other

Page 11 of 18


STO

Doc: 342185279 Page: 21/36

than a disposition in exchange for a valuable consideration to the community. If it later appears that the warrantor made a disposition of community property contrary to this warranty, the warrantor shall pay the warrantee one-half (1/2) of the fair market value of the community property measured, at the warrantee's election:

    a.    On the effective date of this Agreement; or,

    b.    At the time the warrantee discovers the disposition, less any appreciation in value attributable solely to the acts of the donee(s) and his successor(s).

This Agreement shall not impair the availability, in a Court of competent jurisdiction, of any other remedy arising from the undisclosed disposition of any property.

### 14. SOCIAL SECURITY BENEFITS

The Social Security benefits of each party now or subsequently declared to be community property, if any, shall be declared to be the sole and separate property of the party who paid into the fund giving rise to such benefits. This waiver by each party is not intended to prohibit any rights that may be derivative in nature, such as those that arise by virtue of having been married ten (10) or more years.

### 15. WAIVER OF RIGHTS IN OTHER'S ESTATE/RETIREMENT

The parties hereby revoke all former wills and trusts executed by them, and each of them, specifically including the "DESALVO/OLANDER TRUST" entered into on May 14, 2001. Each party relinquishes the right to act as administrator or executor of the estate of the other, all right to inherit from the other, and all right to receive in any manner any property of the other on the death of the other, either under succession laws or under community property laws, or so-called family allowance, except as a devisee, legatee or beneficiary under any Will or other instrument subsequently executed by either party, or when the other party is named in such capacity or such right is explicitly provided in this Marital Settlement Agreement. Each party also waives any interest in the other's retirement plans, if any. Each party also acknowledges hereby being advised:


ARD    STO

Page 12 of 18

a.    To consider the immediate drafting and examination of a new Will; and

b.    To review all property rights and employment benefits which have a survivorship or inheritance factor (such as life insurance, pensions, inter vivos trusts, joint tenancy real and personal property, and bank accounts); and

c.    To ensure that said Will and said rights and benefits accurately reflect the current desires of such party to this Agreement.

16.  PROPERTY ACQUIRED AFTER DATE OF SEPARATION

Each party shall own and hold the property received by him or her under the terms of this Marital Settlement Agreement, all earnings and other property hereafter acquired by each and acquired after the date of separation, respectively, as his or her sole and separate property, free from any claim of the other (except as specifically provided for in this Judgment) or of any creditor of the other by reason of the community property laws of the State of California, or by reason of any other law or fact.

17.  EXECUTION OF FURTHER INSTRUMENTS

Each party shall further execute or deliver any instrument, furnish any information or perform any other act reasonably necessary to carry out the provisions of this Judgment without undue delay or expense. Either party who fails to comply with this paragraph shall reimburse the other party for any expenses, including attorney fees and Court costs, that as a result of this failure becomes reasonably necessary for carrying out this Judgment. If either party fails to execute any documents necessary to effectuate the terms of this order within thirty (30) days after presentation of said documents, the Clerk of Court may be appointed to execute said documents, upon ex-parte application of the other to the Superior Court, provided forty-eight (48) hours notice is given, where reasonable.

18.  ADVISEMENTS

Husband and Wife have each had a meaningful opportunity to consider this agreement before signing it. Each understands that he or she could continue to investigate the financial issues through discovery and other means initiated privately or through their

Page 13 of 18

ARD    STO

respective attorneys. Each party acknowledges that prior to entering into this Agreement, each party has hired and consulted with an attorney of his or her own choosing who has explained to that party's satisfaction the rights, duties, obligations and legal effects of this Agreement. Husband and Wife have carefully and fully reflected on these rights and obligations before signing this agreement. Neither Husband nor Wife have been the subject of any fraud, duress, threat, pressure, undue influence, or overreaching of any type. Husband and Wife state that this agreement fairly reflects their respective rights and obligations, that this agreement is a fair division of the community estate, and that this agreement is a fair confirmation of their respective separate property.

19. RESERVATION OF JURISDICTION

In the Judgment anticipated by this Agreement, there shall be reserved to the San Diego County Superior Court, in addition to the jurisdiction specifically mentioned elsewhere in this Agreement, the jurisdiction to supervise and make additional orders, as necessary, regarding:

a.      payment of any obligation ordered paid or allocated in this Agreement;

b.      division of assets as agreed to herein;

c.      execution of any documents required or reasonably necessary to carry out the terms of this Agreement;

d.      overall enforcement of this Agreement; and,

e.      resolve any dispute arising between the parties under this Agreement.

20. INCORPORATION OF AGREEMENT

This Agreement in its entirety shall be incorporated into, made a part of, and merged into the Judgment entered in the pending dissolution of marriage proceeding. This Agreement is not conditional upon any such incorporation, merger or filing. Husband and Wife shall carry out and perform each and every provision of this Agreement, whether or not the provision is made a court order. The warranty provisions shall remain viable and

AKD        STO

Page 14 of 18

enforceable remedies available to either party after Judgment is entered in the dissolution of marriage proceeding.

21. **WAIVERS AND JUDICIAL ACTION**

The matter may proceed on the default or uncontested calendar without further notice to either party, on any date convenient to the Court and may be heard before a pro-tem Judge. The parties waive their rights to notice of trial, any right to a request for statement of decision, to move for a new trial, and to appeal.

22. **OTHER TERMS AND CONDITIONS**

a.    Unenforceability of Part of the Agreement. Should any section, provision or portion of the Agreement be held to be invalid, illegal, void or unenforceable, then such section, provision or portion shall be deleted from this Agreement and it shall be read as through such invalid, illegal, void or unenforceable section, provision or portion was ever included and the remainder of this Agreement, excluding such invalid, illegal, void or unenforceable section, provision or portion, shall nevertheless subsist and continue in full force and effect.

b.    Enforcement of Terms of Agreement - Fees and Costs:  Should it be necessary for either party to bring an action in this or any other Court for the enforcement of any of the provisions of this Agreement, that Court shall have jurisdiction to award attorney's fees to either party consistent with the provisions of the California Family Code.

23. **REPRESENTATION BY COUNSEL AND KNOWLEDGE OF AGREEMENT**

a.    The parties acknowledge that they have the right to seek legal advice in connection with the pending dissolution of marriage proceeding and with the negotiation and preparation of this Agreement. Husband acknowledges that he has retained Charles J. Schmidt, Esq. to advise him in connection with the negotiation and preparation of this Agreement. Wife acknowledges retaining an attorney and later substituting herself into the case in place of the attorney. Wife acknowledges the ability to retain other counsel and declines to do so.

Page 15 of 18

ARD            STO

b.    Each party acknowledges and declares that he or she respectively:

1. Is fully and completely informed as to the facts relating to the subject matter of this Agreement, and as to the rights and liabilities of both parties;

2, Enters into the Agreement voluntarily, free from fraud, undue influence, coercion or duress of any kind;

3. Has given careful and mature thought to the making of this Agreement; and,

4. Fully and completely understands each provision of this Agreement.

c.    Each party agrees to bear his or her own attorney fees and costs.

24. TERMINATION OF JOINT TENANCIES

Effective as soon as both parties have signed this Agreement, any and all joint tenancy ownerships (with rights of direct survivorship) between the parties are terminated. The parties shall own those assets as tenants-in-common. This section applies to all ownerships including, but not limited to, real property, vehicles or institutional accounts.

25. REPORTING OF INCOME AND INDEMNITY

It shall be the responsibility of each party to report all income, losses or deductions (or other taxable consequences) to the taxing authorities in a manner consistent with the terms of this Agreement and in compliance with applicable tax laws and regulations. In the event either party reports or fails to report income, losses or deductions (or treats the division of property) in a manner inconsistent with the terms of this Agreement, that party shall indemnify the other party for reasonable attorneys and accountants fees, and costs of litigation in defending the reporting required by this Agreement against the other party or taxing authorities. In addition, each party shall indemnify the other for taxes, interest, penalties and other assessments arising as a result of the reporting of income (or the treating of the division of property) in a manner inconsistent with the terms of this Agreement. This Section shall apply to all forms of tax returns required by any governmental agency.

Page 16 of 18



ARD        STO

(Page 33 of 36)

### 26. TAX DOCUMENTATION:

a.      Each party shall forward to the other a copy of any tax deficiency notice or other correspondence or documentation received from any federal, state or local taxing authority relating to any joint returns filed by Husband and Wife.  Each party agrees to cooperate fully with the other and to execute any document reasonably requested by the other, and to furnish information and testimony with respect to any tax liability asserted by taxing authorities on any joint return.

b.      A party shall reimburse the other party for all damages and costs incurred as a result of a party's failure to abide by the terms of this Section, including reasonable attorney's fees and costs, and accountant's fees, whether incurred in defending an action by the taxing authorities or in enforcing the provisions of this Section.

Each of us has read this Agreement and is fully aware of its content and its legal effect.

THE FOREGOING IS HEREBY AGREED TO BY:

Dated:  March _16_, 2005        _Anthony DeSalvo_
                                Husband, ANTHONY DeSALVO

Dated:  March _16_, 2005        _____
                                Wife, SHELLEY TAYLOR OLANDER

APPROVED AS TO FORM AND CONTENT:

Dated:  March _17_, 2005        _____
                                Charles J. Schmidt, Attorney for Husband

Page 17 of 18



**ACKNOWLEDGMENT**

STATE OF CALIFORNIA            )
                              ) ss.
COUNTY OF SAN DIEGO           )

    On _March 16_ , ~~2004~~ 2005 JE, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Anthony DeSalvo, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and acknowledged to me that she/he executed the same in his/her authorized capacity, and that by their signature on the instrument the persons, or the entity upon behalf of which these persons acted, executed the instrument.

    WITNESS my hand and official seal.

COPY

_____
Notary Public in and for said
County and State

> JOE EWING
> Commission # 1356759
> Notary Public - California
> San Diego County
> My Comm. Expires Jun 14, 2006

STATE OF CALIFORNIA            )
                              ) ss.
COUNTY OF SAN DIEGO           )

    On _March 16_ , ~~2004~~ 2005 JE, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Shelley Taylor Olander, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and acknowledged to me that she/he executed the same in his/her authorized capacity, and that by their signature on the instrument the persons, or the entity upon behalf of which these persons acted, executed the instrument.

    WITNESS my hand and official seal.

COPY

_____
Notary Public in and for said
County and State

> JOE EWING
> Commission # 1356759
> Notary Public - California
> San Diego County
> My Comm. Expires Jun 14, 2006

ARD                    STO

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Hartford Life and Annuity Insurance Company | Gregory Shaughnessy as Executor of the Estate of Shelley Taylor Olander and Anthony R. DeSalvo, an individual |

**(b)** County of Residence of First Listed Plaintiff **Connecticut**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **San Diego**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Burke, Williams & Sorensen, LLP
Michael B. Bernacchi, SBN 163657
444 S. Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600

Attorneys (If Known)

'08 CV 0133 JM POR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [X] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [X] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [X] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 365 Personal Injury— Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine / **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability / [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting / [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment / Habeas Corpus: | [ ] 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare / [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities—Employment / [ ] 540 Mandamus & Other | **IMMIGRATION** | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities—Other / [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights / [ ] 555 Prison Condition | [ ] 463 Habeas Corpus— Alien Detainee | | |
| | | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
F.R.C.P., Rule 22

Brief description of cause:
Complaint in Interpleader

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
January 23, 2008

SIGNATURE OF ATTORNEY OF RECORD
Michael B. Bernacchi

**FOR OFFICE USE ONLY**

RECEIPT # 14678   AMOUNT $350   1/23/08 BH   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 146785    — BH

January 23, 2008
15:33:21

Civ Fil Non-Pris
USAO #.: 08CV0133 CIVIL FILING
Judge..: JEFFREY T MILLER
Amount.:                    $350.00 CK
Check#.: BC# 66064

Total—>  $350.00

FROM: HARTFORD LIFE INS. V. SHAUGHNE
      CIVIL FILING